## John D. McLemore *v.* John D. Hawkins et al.

1. Promissory note — payee re-acquiring it is restored to his original title, and may deal with it as owner. — The payee of a promissory note may accompany the transfer of it with a trust, and when that has failed, or been accomplished, and the paper has been returned to him, he may sue on it without re-indorsement. By the return of the note to him, he is, *ipso facto*, restored to his original title, and may deal with it as though he had never negotiated it, and may strike from it the previous indorsements, or not, at his pleasure, and may sue without doing so.

2. Same — pledge — power of pledgee — his duty and obligations in reference to the subject of the pledge. — The pledgor remains owner of the thing pledged, whether it be a chattel or negotiable paper, and the pledgee, with whom is the possession, must use the care and diligence with respect to the thing, according to its nature, which men of ordinary prudence bestow about their own affairs. Upon default made in the condition upon which the pledge was made, the title does not vest in the pledgee, but still retains its character as security or indemnity for the principal obligation, to be made effective by a disposition according to law. If negotiable paper be the subject, the pledgee, at his peril, must protect the right of the pledgor, by making demand, protesting and giving notice; for by negligence in this behalf he makes the debt his own.

3. Same — same — same. — The power of the pledgee of a note or bill extends to the collection of the entire debt pledged, to be applied, first, to liquidate his demand, and to hold the surplus to the use of the pledgor. As to the excess, his power is that of an agent to collect, and does not extend to authority to compromise, make a rebate, or to forgive, in whole or in part.

4. Persons dealing with agent or trustee must know the extent of his authority. — Those who deal with an agent or trustee must know the

extent of the delegated power, for the act done will be valid or not, as it conforms to the measure of authority confided to him.

5. CASE IN JUDGMENT. — The payee of a note indorsed it in blank, and delivered it to the commercial firm of which he was a member, in New Orleans, which delivered it in pledge to a bank in New Orleans, accompanied with a contract in writing, that the bank might sell it at public or private sale, in case of default in the payment of the debt, for which it was pledged. Default was made, and long afterward the agents in New Orleans of the makers of the note pledged, acting for account of said makers, paid the note to the bank, in the depreciated notes of the bank, and with an amount considerably less than was due by the note, and obtained from the bank the note, defaced with its canceling hammer, and marked "paid:" *Held*, that the payee is entitled to recover of the makers the difference between the amount due by the note, and the amount paid to the bank by the agent of the makers. The note coming in violation of trust and confidence, into the possession of the makers, before it was discharged and acquitted to them by competent authority, did not absolve them from the obligation to pay what was due upon it.

6. DEFACEMENT OF NOTE NO BAR TO RECOVERY ON IT, IF SHOWN TO HAVE BEEN IMPROPERLY DONE. — That the note was canceled and marked paid, does not bar a recovery upon it, if it be shown that this was improperly done.

7. PRACTICE — EVIDENCE PROPOSED MUST BE TAKEN AS TRUE, IN CONSIDERING THE LEGAL PROPOSITION INVOLVED. — In considering the competency and relevancy of evidence proposed to be introduced, the court must deal with the legal proposition, on the idea that such facts are true.

8. QUÆRE — WHETHER A VALID SALE OF A NOTE PLEDGED, CAN BE MADE BY PLEDGEE TO THE MAKER, AT PRIVATE SALE. — It is very questionable, whether a valid sale of a note pledged, can be made by a pledgee to the maker, at private sale. Such a transaction, without the consent of the pledgor would be very suspicious, especially if the maker be solvent.

ERROR to the circuit court of Carroll county, NILES, J.

*J. Z. George* and *W. P. Harris*, for plaintiff in error.

*Walthall & Galladay*, for defendants in error.

[Counsel on both sides filed elaborate written arguments which are too lengthy for insertion here, and too full and compact to justify any abridgment by the reporter.]

SIMRALL, J. :

McLemore, Rayburn & Co., being indebted to the Louisiana State Bank $6,525, by promissory note, payable four months after the 3d March, 1862, pledged as security therefor to the bank the note of J. D. & F. Hawkins, dated January 1, 1861, and one 1st March, 1862, for $9,333. The note

of the Messrs. Hawkins was payable to J. D. McLemore, and by him indorsed in blank.  By the contract of pledge, which was in writing, if McLemore, Rayburn & Co. did not, at maturity, pay their note, or any renewal thereof, then the president and cashier of the bank, or either of them, as agents, were authorized to sell the note for cash at public or private sale.  The note of the Messrs. Hawkins was delivered by McLemore, with his blank indorsement upon it, to McLemore, Rayburn & Co. (of which commercial firm he was a member), for the purpose of being pledged as above stated, for the credit and accommodation of his firm.

Long after the maturity of the note, in 1865, Messrs. Carroll, Hoy & Co., the factors and agents of the defendants, the makers of the paper, and for their account took up this note from the bank, by paying less than its face, in the circulation notes of the bank then at a discount or depreciation of forty-two cents on the dollar.  The note was defaced with the canceling hammer and the word "paid" was written upon it.

The contract of pledge was attached to the note at the time of this transaction with Carroll, Hoy & Co., who had notice of the pledge, and the conditions upon which the bank held the paper.

These may be accepted as the leading facts ; the questions of law arise upon them on the offer to make proof of them on the trial.

Much was said at the argument as to the effect of a blank indorsement of negotiable paper.  A bill or note thus indorsed passes from hand to hand by delivery, like a note payable to bearer.  A *bona fide* holder, however remote from the payee and indorser, has implied authority to write over the blank indorsement an order to pay to himself or any other person, without noticing the immediate holders who necessarily negotiate it, until it came to himself.

It is quite well settled by authority, giving effect to commercial convenience and usage, that the holder of such

paper may accompany the transfer with a trust, and when that has failed or been accomplished, and the paper has been returned to the beneficial owner, he may sue without a re-indorsement. The general rule, as stated by Story in his treatise on notes, p. 452, § 246, is, that the possession of a note by the payee or a subsequent indorser, is *prima facie* evidence, notwithstanding subsequent indorsements thereon, that he is the lawful owner and has re-acquired the legal title. And this is so where the paper had been negotiated for value in due course of business. In Dugan v. United States, 3 Wheat. 183, the court explicitly states the doctrine to be, that if one who indorses paper to another, either for collection or value, shall come to the possession thereof again, he shall be regarded as *bona fide* owner and holder, unless the contrary shall be proved ; although there may be one or more subsequent indorsers, and that he may strike from the paper such indorsers or not, at his pleasure. In such circumstances, if nothing else appeared, the legal presumption would be, that the last holder had procured payment from the party who negotiated to him, and so on until the paper came to him, or that he, being liable, had paid the last holder, so that no party subsequent to him had any interest in it, or was subject to any liability. Whether, therefore, such names were stricken out or not, would be purely a matter of form, possession by the prior indorser without receipt or re-indorsement from subsequent parties restored him to his original position and title as against all antecedent parties. If the law indulges the presumption that subsequent indorsers have no interest in, or claim upon, the paper, or the money due upon it, to insist upon erasing their names as a condition precedent to the perfection of his title and right to sue the maker or a prior indorser, would be a mere ceremony, empty and without meaning. It would be to cling to the shadow, to adhere to mere form without a particle of substance. It is the return and possession of the note which is the evidence of his right against prior parties. It would be by virtue of this title that he would have

authority to obliterate subsequent names, not to aid or perfect his right, but to extinguish any semblance or color of claim in others.   United States v. Barker, 1 Paine, 162; Squeer v. Stockton, 5 La. Ann. 121 ; Wood v. Tyson, 8 ib. 104 ; Norris v. Badger, 6 Cow. 450 ; Bank of Utica v. Smith, 18 Johns. 238.

A large part of the commercial and financial business of the country is conducted by a transfer of negotiable paper, on trust and conditions.   Indorsement for collection is a familiar illustration.   Bankers and commercial men distinctly understand that indorsed notes and bills, placed in the hands of an agent for collection, does not transfer to the agent the beneficial ownership.   As against all the world, except the real owner, the legal title passes for the purposes of demand, protest, notice and collection.   If paid, the agent holds the proceeds, just as he did the note or bill, as agent for account of his principal.   In this day of active, ramified commerce and business, to trammel remedies on negotiable paper in favor of the real owner with formalities which may tend to embarrass, but can subserve no beneficial end, does not comport with wise policy.   We think, therefore, that whenever a trust or agency is coupled with the transfer, when the transferee no longer sustains that relation, but the end has been accomplished, the true owner, upon the return of the paper to him, is, *ipso facto*, restored to his original title, and he may deal with the note as though he had never negotiated it.   The indorsement by McLemore, and the delivery of the note to McLemore, Rayburn & Co., was for the purpose of the pledge to the bank, he remaining the proprietor, subject to the claims of the pledgee.   As to the bank, McLemore, Rayburn & Co. were the apparent legal holders, as competent to make the pledge as though the paper were their property.

This brings us to consider the relations of pledgor and pledgee, and their respective rights.   This transaction, having been made in New Orleans, is governed by the civil law of Louisiana.   By that system, as well as the common law,

the pledgor remains owner of the thing, whether a chattel or negotiable paper, and the pledgee, with whom is the possession, must use the care and diligence with respect to the thing, according to its nature, which men of ordinary prudence bestow about their own affairs. Upon default made in the conditions upon which the pledge was made (as non-payment of the principal debt), the title does not vest in the pledgee; it still retains character as security, or indemnity for the principal obligation, to be made effective by a disposition according to the law. 2 Kent's Com. 773, 774; 2 Pars. on Cont. 110. If negotiable paper be the subject, the pledgee, at his peril, must protect the rights of the pledgor by making demand, protesting and giving notice to drawer or indorsers; for by negligence in this behalf he makes the debt his own. Nolan v. Clark, 10 B. Monr. 239; Jamison v. Parker, 7 Mitch. 355.

Such are the rules of the civil law. The pledgor, the debtor, continues proprietor of the pledge until divested of his property, which, until disposed of, is a deposit to secure the creditor's privilege upon it. Civil Code, art. 3133. The creditor may collect "the debt given in pledge, and take measures to do so; when received, the surplus must be paid over to the pledgor." Art. 3137. Like other bailees, the pledgee has a qualified title, upon which he may count to protect the pledge against the wrong-doer, and pursue it for the purposes of indemnity. He is clothed with a trust and a power over the subject, to deal with and dispose of it according to agreement and law. If a credit be the subject, he has no other power except to collect the money and apply it to discharge the principal debt, or, if not paid, to make the disposition warranted by agreement and the law. As we have seen, if the pledge be commercial paper, his duty as trustee or bailee enjoins that he must look to the interest of the pledgor, so as not to release any party by laches. His power extends to the collection of the entire debt, to be applied first to liquidate his demand, and to hold the surplus to the use of the pledgor. As to the excess, his power

is that of agent, to collect, and does not extend to one with authority to compromise, make a rebate, or to forgive in whole or in part. It is a familiar doctrine that those who deal with an agent or trustee must know the extent of the delegated power. The act done or contract made will be valid or not, as it conforms to the measure of authority confided to him by the principal. If Carroll, Hoy & Co. had taken up this note from the bank, with no other notice and knowledge than that the bank held, as indorsee, it is quite manifest that the discharge would have been complete, though they had paid but half the face of the debt. They would not have been bound to look beyond the note itself. The indorsement of McLemore was evidence that the bank was a legal holder, and they were under no duty to inquire into the consideration upon which the bank obtained the paper. But if not before, certainly at the time of, the payment, Carroll, Hoy & Co. had notice of the terms upon which the bank held the note. Notice to them was notice to the defendants, for in this matter they acted as their agents. They, for the benefit of the defendants, participated with the bank, or its officer, in the breach of trust, if any was committed. As already stated, the bank could receive the entire debt, and hold the surplus, as agents or trustees of the pledgor. This it could do, and no more. If there was a co-operation between the agents of the defendants and the bank, by which, after securing enough to pay the debt of McLemore, Rayburn & Co., the note was delivered to them, with still a large balance due and unpaid, then the defendants, through their agents, were participants in a fraud upon the plaintiff. They were accepting the discharge of a debt, due the plaintiff, from a party incompetent to give it. If so, the act was not obligatory upon the plaintiff, and does not conclude him.

The surrender of the note to Carroll, Hoy & Co. does not contribute to release the defendants from their indebtedness for the excess ; because the bank could not rightfully deliver up the paper, except upon a payment in full.

The note coming in violation of trust and confidence, into the possession of the defendants, before it was discharged and acquitted to them by competent authority, did not absolve them from the obligation to pay what was due upon it.

But the further objection is, that the defendants now have the note, canceled by the implement used by the banks for that purpose, and with the word "paid" written upon it. The cancellation, mutilation, or the utter destruction of a note or bond, does not necessarily annihilate their force and effect, as debts, and evidences of debt. If the one or the other of these effects are brought about by accident, or casualty, the note or bond subsists for all legal purposes. Upon explanation by evidence, it is as though the cancellation or destruction had never occurred. The production of the note on the trial, if in existence, and subject to the control of the plaintiff, is necessary for the protection of the defendant, for it cuts off the possibility of a fraudulent use of the paper to his prejudice. But if the note has been destroyed (as by fire), the remedy is at law, as complete as if it could be exhibited at the trial. If lost, there is also a remedy to recover upon it. In these instances, the requirement of the law that the plaintiff shall account in his evidence, for the non-production, is reasonable and just. If the note has got into the possession of the defendant surreptitiously, or by any improper and unlawful means before its payment, upon what principle, founded in reason, shall liability on the note of the defendants to the plaintiff be absolved? It would hardly be controverted that a recovery could be had under the common counts. But it cannot be conceived by the legal mind, that a recovery can be had in any case under the common counts, where it would be denied, upon a full narrative of the facts, in a special count. It was long ago said that *indebitatus assumpsit* will lie, where the defendant *ex æquo et bono*, ought to pay money to the plaintiff. If the trial had taken place, under that count, the plaintiff must show his right to recover; to do that he must prove

the circumstances which make up the case.   So that the primary proposition returns upon us, have the defendants been discharged from the uncollected part of the note, if not, the money is owing to the plaintiff, and he may as well recover in a special count as in *indebitatus assumpsit.*

We have accepted the offer of evidence to the jury, made by the plaintiff, as constituting the facts in the case.  In considering the competency and relevancy of evidence proposed to be introduced, the court must deal with the legal proposition, on the idea that such facts are true.   We understand the case proposed to be made out in proof, to have been a payment of the note to the bank, and not a purchase of it.   And if a payment, as we have shown, the bank could not remit the excess so as to absolve from liability to the plaintiff.   We think the testimony ought to have been received.

The law of Louisiana seems involved in some confusion as to the disposition of a credit which has been pledged. The Roman law and the common law agreed, that, before a sale could be made, the pledgor should have notice to redeem.   It is said by Judge Story on Bailments, § 306, that the civil law of continental Europe and of Louisiana require a judicial sale.   The common law insisted that the sale should be public, and did not allow the pawnee to become the purchaser.

It is very questionable whether a valid sale of a note could be made to the maker at private sale.   Such a transaction, without the consent of the pledgor, would be very suspicious, especially if the maker were solvent.   Sale implies the transfer of a thing to another, with a right of use and a power of disposition.   If the pledgee makes a private arrangement with the solvent maker of a note, by which he becomes the purchaser for much less than is due upon it, the moment the paper was delivered to the maker it would be extinguished as a debt; he could make no use or disposition of it.   It would be the duty of the courts very carefully to scrutinize such a transaction, and, if the

law of Louisiana would support such act at all, it should certainly have the *indicia* of fairness and good faith. If necessary to the ends of justice, it should have no other effect than a payment. Certainly, for the abuse or improper exercise of such a power, to the injury of the pledgor, the pledgee would be liable to the full amount of the credit surrendered. If the pledgee were insolvent, or, for other reasons, could not respond in damages, the argument would be very strong to treat the ostensible sale as a payment, leaving the owner of the paper to his remedy against the maker for the uncollected part of the debt.

It may be necessary to make some observations on the pleadings. It is not easy to determine whether the third plea meant to rely upon a purchase or payment of the note. If the former we are inclined to the opinion, that the pledgor was entitled to notice of the proposed sale, so that he might redeem or assent, or make his objections. The statute of the 15th March, 1855, of Louisiana, so far altered the law as to dispense with judicial sentence to sell, and "allowed a disposition or sale, in such manner as may be agreed upon by the parties." If a private sale is agreed upon, is any thing more dispensed with than the sentence of the court. Is not notice still necessary, do not all the reasons which ever obtained fully apply? If not named does it not still subsist? But a statute approved 22d January, 1862, so far changed the law as to require "a judgment in the ordinary course of law." We have not been able to ascertain whether this statute has been recognized by the courts of Louisiana as valid law. According to the principle which we have recognized, it would be valid; so also, in the courts of the United States. Upon the whole we have concluded to sustain the demurrer to the third, fourth and fifth pleas, and overrule it as to sixth and seventh. This will enable the parties to have a second trial without embarrassment growing out of the pleadings, and in better conformity to these views. We do not positively commit ourselves to the necessity of notice to the pledgor. We are not

now fully satisfied on that point, that is, if the transaction shall be proved to be a sale, and not a payment.

Judgment reversed and *venire de novo* awarded.