## Kentucky Title Savings Bank & Trust Company v. McClarty, et al.

(Decided February 20, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. **Pledges—Conversion.**—A pledgee who sells or compromises with the maker, the pledged obligation, without the consent of the pledgor, converts to his own use, the pledge.

2. Pledges—Conversion—Remedies.—The pledgor, upon a conversion by the pledgee, may sue the pledgee, or the maker with notice of the conversion, for the value of the pledged obligation less the amount of the pledgee's claim against same.

ALEX. P. HUMPHREY, HELM BRUCE, HUMPHREY, MIDDLETON & HUMPHREY and BRUCE & BULLITT for appellant.

GIBSON & CRAWFORD for appellee, C. C. McClarty.

GIBSON & CRAWFORD and W. PRATT DALE for appellee, C. C. Bickel.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

C. C. McClarty, one of the appellees, on September 4th, 1909, owned six hundred and fifty-three shares of the capital stock of the First National Bank of Louisville, Kentucky, and, on that date, sold six hundred and twenty-five shares of same to the Kentucky Title Savings Bank & Trust Company, through his agent, the Fidelity Trust Company, under the contract fully set out in the opinion this day rendered, in the case of Kentucky Title Savings Bank & Trust Company v. Floyd Day, and all of the stock so owned by appellee had been theretofore assigned by him to, and was held by various pledgees, to secure the payment of separate debts that appellee owed them, which debts, in each instance, were largely in excess of any value of the stock, even as found by the lower court, which was the same in this case as in the Day case, *supra*.

On April 24th, 1912, McClarty brought this suit against the savings bank, in his own right, and for and on behalf of his pledgees and with their consent, naming each of them, to recover the value of the pledged stock. Thereafter, by a compromise between the savings bank and the pledgees, in which McClarty refused to participate, the savings bank settled in full with all of the pledgees, their claims against the savings bank upon its obligation to pay for the pledged stock, taking, from some of the pledgees, assignments of their claims against McClarty. The stock originally held by these pledgees had been theretofore sold and delivered to the savings bank, under the contract of September 4th, 1909, heretofore referred to, and there then existed, in the place of the pledged stock, only an obligation of the savings bank to pay what was due under the contract for the stock, to the pledgees, to the extent of their claims, and

to McClarty, any excess. McClarty, therefore, had no beneficial interest in this obligation of the savings bank, substituted by agreement of all parties for the pledged stock, unless it had a value in excess of the debts due the pledgees, and his only beneficial interest in the obligation was in such excess, if any. It is conceded by appellee, that there was no such excess value, even according to the value placed upon the obligation by the judgment of the lower court, which, as is fully set out in our opinion in the case of Kentucky Title Savings Bank & Trust Company v. Day, *supra,* was largely in excess of its real value. It would, therefore, seem clear that, when the savings bank settled with the pledgees, and they dismissed the action to the extent of their claims, which they had the right to do, there was nothing left in the suit except McClarty's claim, in his own right, for whatever was due to him on the savings bank's obligation, in excess of the amount due the pledgees. As their claims greatly exceeded the total value of the obligation, even as fixed by the lower court, it is apparent that McClarty was not entitled to recover anything from the savings bank; and, hence, the other appellees, asserting liens upon the amount due McClarty, were not entitled to recover from the savings bank.

The savings bank did not take assignments, from all of the pledgees, of their claims against McClarty, but the result, in so far as McClarty and the pledgees are concerned, is the same as if it had, since the compromise by the pledgees was a conversion by them, to their own use, of the savings bank's obligation, and extinguished their claims against McClarty and rendered the pledgees liable to McClarty in damages, for any injury he had sustained by reason of the conversion. Colebrooke on Collateral Securities, section 96; Jones on Collateral Securities, section 716; 31 Cyc. 838; 2 Joyce on Damages, section 1137; 3 Sedgwick on Damages, 8th Ed., section 1069; First National Bank v. Boyce, 78 Ky. 42; Union Trust Company v. Rigdon, 93 Ill. 458; Peacock v. Phillips, 247 Ill. 468; Hallack Lumber Co. v. Gray, 34 Pac. 1000; McLemore v. Hawkins, 46 Miss. 715; Matheney v. City of Eldorado, 82 Kan. 720, 28 L. R. A. (N. S.) 980 and note; Zimpleman v. Veeder, 98 Ill. 613; DeClark v. Waters, 65 Pac. 855.

Appellee contends that there was no conversion by the pledgees in this case, because the stock originally

pledged had been by agreement of the pledgor and pledgees, sold and delivered to the savings bank. It is true, of course, there was no conversion of the bank stock, but there was a conversion of the obligation substituted therefor, and McClarty then had the election, either to sue the pledgees, in damages, for the conversion, or to sue the savings bank for any balance due, over and above the pledgees' claims. Appellee contends, however, that his right of action against the savings bank is, for the balance due by the savings bank on the obligation, less the amount it actually paid the pledgees in the compromise, rather than for the amount due on the obligation less the amount of the pledgees' claims, and, to support this contention, relies upon the cases of Zimpleman v. Veeder, and DeClark v. Waters, cited above, quoting from the latter, the following:

"Where notes held as security are surrendered to the maker by the pledge at a sum considerably less than their face value, the pledgor has his election to bring an action against the pledgee in tort for wrongfully disposing of the collateral, or against the maker to recover the residue of the face of the notes so surrendered. Coleb. Coll., sec. 96; Zimpleman v. Veeder, 98 Ills. 613. The case last cited is, in some respects, quite similar to the case at bar. A note and deed of trust securing it having been pledged as collateral security, the pledgee sold the note to the maker, for a sum about one-third less than its face value, and delivered to the maker the note and deed of trust. The pledgors brought suit to foreclose the deed of trust, and a decree was entered in their favor, ordering a sale of the premises for the amount of the debt less the sum paid to the pledgee by the maker when the latter procured the note; and the decree was affirmed by the Appellate Court;" construing the statement therein, "the pledgor has the election to bring an action against the maker to recover the residue of the face of the notes so surrendered," to mean, by *residue,* the amount that was due over and above the amount actually paid by the maker to the pledgee in the compromise; but, by examination of the facts of these two cases, it is found, that in the Veeder case the residue was the difference between the amount due on the pledged obligation, and the amount of the pledgee's claim against the note pledged, while in the Waters case it is not entirely clear what the residue

was, but it is stated in the opinion that the facts are quite similar to those in the Veeder case; so that it is fair to presume that in that case, too, the residue referred to was, the difference between the amount due on the obligation and the amount of the pledgee's claim against same.  These two cases are, therefore, upon the facts involved, authority, in harmony with our other citations, that the criterion of recovery by the pledgor is the excess value of the pledge, over and above the claim of the pledgee. This is, necessarily, true, because the pledgor, having the right to enforce, against the pledgee, credit for the face value of the pledge, could not have a larger right against the maker of the obligation, without being permitted to recover a second time a part of the value of the pledge, from the pledgee, which, of course, he has no right to do.  By the conversion the pledgees must give McClarty credit, upon their claims, for the face value of the pledged obligation, which, according to our construction in the Day case, is $26.00 per share, above the forty dollars per share paid by the savings bank thereon prior to the compromise and by agreement of the parties.

It, therefore, results, that the savings bank, upon its counter-claim against McClarty, upon the claims assigned to it in the compromise by the pledgees, was entitled to a judgment for the amount of the assigned claims, less $26.00 per share of pledged stock, rather than $17.23 per share, the amount paid in the compromise.

We are not inclined to disturb the judgment of the chancellor, to the extent that he refused the savings bank a judgment, upon its counter-claim, for the judgment assigned to it by the First National Bank, since we agree with the chancellor, in view of the contract between the parties, that this assignment, especially for so nominal a consideration, was violative of the rights of the sellers under the contract of September 4th, 1909.

For the reasons indicated, the judgment is reversed, with directions to dismiss McClarty's petition and the claims of the other appellees, and to enter a judgment in favor of the savings bank, upon its counter-claim, for the claims assigned to it by the pledgees, for the sum herein indicated.