Eckert *v.* Searcy et al.

[74 South. 818, Division A.]

1. **Pledges.** *What is. Notes as collateral. "Forfeit."*
   Where a debtor deposits notes with a third party with the intention that they are to be a pledge to secure his creditor in an indebtedness due him and with the understanding that if the debt is not paid within a certain time, the creditor is to become absolute owner of such notes, this constitutes a pledge or "forfeit."

2. PLEDGE. *Notes pledged. Wrongful compromise, with maker.*
   The pledgee for whom notes have been deposited as security for a debt, who turns over the notes to the maker on payment of less than their face value, without notice to the pledgor, must, if the maker is solvent, account for the face value of the notes to the pledgor.

3. SAME.
   A court of equity will grant relief to the pledgor who has pledged his securities as collateral and which have been wrongfully sacrificed or compromised with the maker to his injury and damage.

4. SAME.
   Equity will not enforce a forfeiture but will relieve against it.

5. PLEDGOR. *Provision for forfeiture. Validity. Redemption.*
   A provision in the contract of pledge that upon default the pledgee shall have an absolute property in the goods pledged and that the pledgor shall have no equity of redemption, is invalid notwithstanding such a provision, the pledgor may pay what he owes the pledgee and redeem.

6. PLEDGOR. *Notes. Bona-fide purchaser.*
   A maker with knowledge that his notes have been deposited as collateral security, who without inquiry pays the pledgee one hundred and twenty-five dollars for his notes worth at least three hundred dollars, is not a *bona-fide* holder, the circumstances being sufficient to put an ordinary prudent man on inquiry.

APPEAL from the chancery court of Hinds county.
HON. O. B. TAYLOR, Chancellor.
Bill by Mrs. K. Eckert against R. J. Searcy and another. Bill dismissed and plaintiff appeals.
The facts are fully stated in the opinion of the court.

*Percy Clifton,* for appellant.

Searcy held three notes of Lewis' for one hundred dollars each, one of which was then due in a few days, to secure the payment of ninety-eight dollars and seventy cents, the three notes being secured by retained title to one thousand dollars worth of hotel fixtures. Thereupon, without any authority to do so, and without notifying the pledgor to redeem, and without even notifying pledgor

that he was going to sell or dispose of the notes surrendered them to the maker thereof for one hundred and twenty-five dollars, relying solely for authority therefor upon an alleged agreement, that in the event the debt of ninety-eight dollars and seventy cents was not paid by a stipulated date the notes were to be his. Such an agreement, if made, was void. 8 U. S. 332, 24 L. Ed. 775; 84 Hun. (N. Y.) 324; 3 Tex. 119, 49 Am. Dec. 723; 2 Cowan (N. Y.) 324; 32 N. Y. State, 314; 4 Elliott on Contracts, sec. 3059.

The agreement, if made, being void, and no express agreement authorizing him to sell having been made, the law imposed upon him the duty to hold and collect the full face value. *Boswell* v. *Thigpen,* 75 Miss. 308.

Searcy's motive makes not a particle of difference. The tort was the affirmative act of compromising with the maker of the securities. *Union Trust Co.* v. *Rigdon,* 93 Ill. 469; Story on Bailments, sec. 321; *Polock* v. *Jones,* 12 Johns 145.

We do not regard the transaction as a sale, but rather as a compromise between the pledgee and the maker of the notes which were pledged. Searcy had the undoubted right to collect the notes of Lewis' to the extent of paying the debt due him, but he had no right to compromise, and take less than was due on the notes, to come out even on the deal or ahead on the deal. The law imposed upon him the duty to hold them and collect as they became due.

There may be cases, where the note was not well secured, that the pledgee might be justified in receiving a less amount than was due, and surrender the pledged paper; but where the claim held in pledge was well secured, as these were, the pledgee has no right to enter into a compromise, and give up the claim for less than is due thereon. *McLemore* v. *Hawkins,* 46 Miss. 715; *Boswell* v. *Thigpen,* 75 Miss. 308; *Zimpleman* v. *Vender,* 98 Ill. 613; *Union Trust Co.* v. *Rigdon,* 93 Ill. 458; Story on Bailments, sec. 321.

It is claimed for Lewis that he is a *bona fide* purchaser. All that is shown is, that he held the notes in his hands, marked paid, and that he acquired possession from Searcy for one hundred and twenty-five dollars.

We do not regard Lewis as a purchaser at all, but as a compromisee. An arrangement where the security is transferred for less than is due thereon to 'the party already bound by it, is called by Justice STORY, in his work on Bailments, sec. 321, a compromise; and he seems to distinguish such cases from the sale of a pledge, and such an arrangement is designated as a compromise in *Aimpleman* v. *Veeder*, 98 Ill. 613; *Deeply* v. *Clark*, 12 Ind. 428, 12 Johns 145; *McLemore* v. *Hawkins*, 46 Miss. 715; *Boswell* v. *Thigpen*, 75 Miss. 308.

A transfer such as this not being a sale, Lewis could not be a purchaser. Can a maker become a *bona fide* purchaser of his own paper. Some authorities hold that neither an acceptor or maker can be a *bona fide* purchaser. Others say that none of the immediate parties can. Norton on Bills and Notes, page 297, and cases cited; *Zimpleman* v. *Veeder*, 98 Ill. 617.

Searcy under whom Lewis claims, held the notes as security for a pre-existing debt, and was not a purchaser for value. *Bank* v. *Bank*, 106 Miss. 471; *Bank* v. *Strauss*, 66 Miss. 479; *Hinds* v. *Pugh*, 48 Miss. 268; *Perkins* v. *Swank*, 43 Miss. 349; *McLeod* v. *Bank*, 42 Miss. 99; *Pope* v. *Pope*, 40 Miss. 516; *Brooks* v. *Whitson* 15 Miss. 513; *Howey* v. *Pack*, 12 Miss. 229; *Holmes* v. *Carmen*, Freemans Ch. 408.

Searcy's title being defective, Lewis was bound to show that he was a *bona fide* purchaser, in good faith, for value. In determining whether a holder of negotiable paper purchased before due is a *bone fide* holder is to be determined by the simple test of honesty and good faith on his part in making the purchase. In determining whether the purchaser acted in good faith or not,

the amount of the consideration may become a material inquiry. 41 Am. Reports, 462; 34 N. Y. 247; 35 N. Y. 65.

In *DeWitt* v. *Perkins,* 22 Wis. 474, it was held that purchasing a note for three hundred dollars for five dollars against a solvent maker was very strong, if not conclusive evidence of bad faith. And a like decision was rendered in *Hunt* v. *Standford,* 12 Tenn. (6 Yerg.) 387, where a note for three hundred thirty-three dollars and thirty-three cents was purchased for one hundred and twenty-five dollars. In some of the cases it is said that the consideration must be full and fair as well as valuable. *Goldsworth* v. *Lewis,* 12 Barb. 410; *Hall* v. *Wilson,* 16 Ld. 548; *Ward* v. *Trust Co.,* 192 N. Y. 61.

One who purchases negotiable paper without inquiry, when the circumstances are such as would excite the suspicion of a prudent man, does not stand in the position of a *bona fide* holder. 29 L. R. A. 351.

In *Jones* v. *Gordon,* 2 App. Cas. 614, 4 Erc. 416, Lord Blackburn, after pointing out that mere neglect is not sufficient to prevent the holder from being deemed a holder in good faith. "I think that is dishonesty."

Lewis knew his own secret mind that something was wrong, and admitted that: "He didn't care so long as he got the notes in his possession, marked paid."

In *DeWitt* v. *Perkins,* 22 Wis. 474, the court says: "Our own court has held successively whatever is sufficient to excite attention or put a party on inquiry, is notice of everything to which such attention, or inquiry might reasonably lead." Freemans, ch. 323; 5 How, M. 552; 43 Miss. 260; *McLeod* v. *Bank,* 42 Miss. 99.

In the case at bar, suppose the notes had been stolen and transferred to defendant, would not the fact that they were offered to him at a discount of fifty-eight per cent. have been sufficient to put him upon inquiry as to the title acquired.?

*Howie & Howie,* for appellee.

The fact in this case are not that the notes were placed up as collateral. Not at all, Searcy testified that the notes were placed with Thompson with the understanding that he was to hold them until a certain date and that if the debt was not paid by that time in cash, then the notes were to be accepted in full settlement and discharge of the debt.

The notes were not placed up for collateral. They were deposited to be held for future delivery. Searcy had no right at all against them until the time limit had expired, not even as security for what was due him. But when the time arrived, under the agreement, he was entitled to receive them in full settlement and discharge of his debt. This is what was done.

So we say that accepting all the law cited by counsel, we are still bound to arrive at the same conclusion and affirm the case. Yes but they say this is only the statement of Searcy. Correct. But we answer that the chancellor decided this question of fact in favor of the appellees and so this court will not go behind it.

As to Lewis, they say that he could not be a purchaser for value of his own paper but that he could compromise the matter and take his paper up before it was due. If the wording pleases them better than to call it purchasing for value then we will let it go at that. They cite law showing that it was proper for him to "Compromise with the parties to the security, for a less sum than the sum due on the security," see page two of last brief. Then if this can be done the only other question that could possibly arise, as far as Lewis is concerned, is, was he free from fraud in the matter and did he give anything of value for the notes.

The answer to the fraud proposition, is answered on the decision of the chancellor. In fact there was nothing offered that tended to prove fraud on his part. Nor is there any dispute of the fact that he actually paid

the money for the notes. Quite a deal is made of the argument that Lewis did not pay enough for the notes. He got them for as little as he could. He found the holder wanting money badly. Naturally he made the best trade that he could. This was natural. Then too, it must be remembered that it was shown that he did not have even this amount of money to take them up with. He had to borrow this. When a man has to borrow money to take up his paper before it is due, it is but natural to expect that he would require considerable discount.

We contend that he certainly was doing nothing more than discounting his own paper, or compromising it and settling it before due, which was perfectly legitimate.

We submit therefore that the decree of the chancellor should be affirmed.

HOLDEN, J., delivered the opinion of the court.

From a decree of the chancery court of the First district of Hinds county, dismissing the bill of complaint filed by the appellant against the appellee, the appellant, Mrs. Eckert, appeals here.

The case is, briefy, this: On May 4, 1914, the appellant, Mrs. K. Eckert sold to J. M. Lewis, one of the appellees herein, a certain lot of household goods and furniture. The consideration of the sale was three hundred dollars in cash and the execution of eight promissory notes by the said J. M. Lewis to the said Mrs. K. Eckert for one hundred dollars each, the first of which was due and payable thirty days after date, and one due each thirty days thereafter until all of said notes should be paid, and, if default was made in the payment of any one of said notes, then all of the remaining unpaid notes should then and there become due, at the option of the holder. Title was reserved in the vendor of said property, who was Mrs. Eckert, appellant, to secure the payment of said notes. Subsequently, on June

30, 1914, the appellant became indebted to R. J. Searcy, the other appellee herein, in the sum of ninety-eight dollars and seventy cents. This claim of indebtedness was placed in the hands of Allen Thompson, an attorney, for collection. To prevent suit, and to secure the payment of said indebtedness of ninety-eight dollars and seventy cents, the appellant, Mrs Eckert, through her son and agent, E. C. Christman, deposited as security with said Allen Thompson, attorney, on June 20, 1914, three of the above-mentioned notes executed by the said J. M. Lewis to the said Mrs. Eckert. These notes were for one hundred dollars each, all dated May 4, 1914, and none of them due until August 4, 1914. Christman, acting for appellant, Mrs. Eckert, testified that he pledged the three notes with Allen Thompson, the attorney for Searcy, as collateral security for the said indebtedness of ninety-eight dollars and seventy cents due by Mrs. Eckert to the said R. J. Searcy. The appellee R. J. Searcy testified, which must be taken as true on the finding of fact by the chancellor:

"That E. C. Christman, on June 20, 1914, placed with said attorney, Allen Thompson, in his (the said R. J. Searcy's) presence, three notes of one hundred dollars each, made by J. M. Lewis (appellee) to Mrs. K. Eckert (appellant) said notes being indorsed by the said Christman and Mrs. Eckert, with the understanding that if he, the said Christman, did not pay said indebtedness of ninety-eight dollars and seventy cents to the said Searcy by July 5. 1914, that he, the said Searcy, was to become absolute owner of said three notes placed with said Allen Thompson, attorney, in payment of said debt of ninety-eight dollars and seventy cents."

It appears further that on or about the 5th day of July, 1914, the said Allen Thompson, attorney, turned over to the said R. J. Searcy the three notes deposited with him as security, as aforesaid; whereupon, the said R. J. Searcy took said three notes, of the face value of one hundred dollars each, none of them being due at that

time, and without notice to the said Christman, agent, or without notice to Mrs. Eckert, sold the said three notes to J. M. Lewis, the maker thereof, one of the appellees here, for the sum of one hundred and twenty-five dollars. The said Searcy then and there marked said notes "paid" across the face of them, and delivered the same to the said J. M. Lewis, maker. It also appears that, two or three days before the sale of said notes by Searcy to Lewis, the maker, the appellee Lewis was informed by one J. W. Green, in conversation, that Searcy did not have the notes, the said Christman having already informed Green that the notes were deposited as collateral security with the attorney of the said Searcy, at which time, and during which conversation, the said J. W. Lewis, appellee, remarked that he "did not care where Searcy got the notes so long as Searcy turned them over to him and they were marked 'paid.'" It appears that the three notes signed by Lewis, for one hundred dollars each, payable to Mrs. Eckert, were good and were secured by a lien on the furniture, the purchase money for which had been partly paid, and the maker was solvent.

When the appellant, Mrs. Eckert, discovered that the three notes signed by appellee Lewis for one hundred dollars each which had been pledged as collateral security to pay the ninety-eight dollars and seventy cents indebtedness due Searcy had been surrendered to the maker, Lewis, and marked "paid," and considered redeemed by Lewis, she filed this bill in the chancery court, asking for relief and recovery against the appellees R. J. Searcy and J. M. Lewis for the difference due her on the three notes of one hundred dollars each; and, on the hearing of the cause, the relief sought was denied and the bill dismissed, and this appeal is prosecuted from this decree.

It appears to us that there are really but two questions in the case that deserve consideration and discussion by us. They are: First, were the three one hundred dollar notes left with Thompson, attorney for appellee

Searcy, by Christman, for Mrs. Eckert, to secure the payment of the indebtedness of ninety-eight dollars and seventy cents due by Mrs. Eckert to Searcy, a pledge as collateral security for the payment of the ninety-eight dollars and seventy cents indebtedness due Searcy on July 5, 1914? If the transaction was a pledge of the notes as collateral security, then there can be no question as to the liability of the appellee Searcy to account to Mrs. Eckert for their wrongful disposition. Second, if the transaction was a pledge, as security, and Lewis, appellee, the maker of the notes had notice of, or was put upon inquiry, as to the fact that his notes were being held as a pledge of collateral security by Searcy, and he knew, or should have known, that Searcy had no right to dispose of the notes at such a great sacrifice and in such manner and without notice, and knowing this when he purchased, or pretended to purchase, the notes from Searcy for one hundred and twenty-five dollars, his own notes, which were worth three hundred dollars and thus participating in the wrong, did Lewis become a trustee "in invitum" and accountable to the appellant, Mrs. Eckert, for the amount called for by the three notes of one hundred dollars each executed by him, less the debt due by the appellant, Mrs. Eckert, to the appellee R. J. Searcy, which was ninety-eight dollars and seventy cents?

Taking the whole testimony in this record, and viewing it from the most favorable standpoint for the appellees, we are clearly of the opinion that the transaction here of leaving the three one hundred dollar notes with Attorney Thompson to secure the ninety-eight dollars and seventy cents indebtedness due Searcy was nothing more or less than a pledge of the three one hundred dollar notes as collateral to secure the payment of the ninety-eight dollars and seventy cents indebtedness due to Searcy by the appellant, Mrs. K. Eckert. It is plain, from the testimony of the appellee Searcy, that the deposit of the notes with Allen Thompson, attorney, was

intended as a pledge to secure the ninety-eight dollars and seventy cents indebtedness, or that he pledged them as security and as a forfeit, all based upon ''the understanding that if he, the said Christman for Mrs. Eckert, did not pay said indebtedness of ninety-eight dollars and seventy cents to the said R. J. Searcy by July 5, 1914, that he, the said R. J. Searcy, was to become absolute owner of said three notes placed with Allen Thompson, his attorney, in payment of said debt of ninety-eight dollars and seventy cents.'' Certainly this constitutes a pledge, or ''forfeit,'' to secure the indebtedness of ninety-eight dollars and seventy cents, and it must be treated as such, and appellee Searcy held accountable to Mrs. Eckert for the face value of the notes.

A court of equity will grant relief to the pledgor, whose securities he has pledged as collateral and which have been wrongfully sacrificed or compromised with the maker to his injury and damage. Equity will not enforce a forfeiture, but will relieve against it. Pomeroy's Eq. Jur. (3d Ed.) vol. 1, section 433.

''A provision in the contract of pledge that upon default the pledgee shall have an absolute property in the goods and the pledgor shall have no equity of redemption is invalid, and notwithstanding such a provision the pledgor may pay what he owes the pledgee and redeem.'' 22 Am. & Eng. Enc. Law (2d Ed.) p. 877; 31 Cyc. 859, and cases cited; *Swofford Bros.* v. *Randolph,* 151 Mo. App. 385, 132 S. W. 255; *Vickers* v. *Battershall,* 84 Hun, 496, 32 N. Y. Supp. 314; *McLemore* v. *Hawkins,* 46 Miss. 715; *Boswell* v. *Thigpen,* 75 Miss. 317. 22 So. 823.

In *Boswell* v. *Thigpen, supra,* Justice TERRAL said:

''The right of property in the thing pledged does not pass to the pledgee, but remains with the pledgor, subject to the lien of the pledgee. 2 Kent, 581. The pledgee's character is that of a trustee for the pledgor—first, to pay the debt, and, second, to pay over the surplus to the pledgor—and he cannot deal with the property so

as to destroy, or even impair, its value. The pledgee cannot sell the subject of the pledge unless he is specially authorized so. to do. His authority to deal with the pledge is determined by the law. In the case of promissory notes, and other negotiable instruments, he is *prima facie* bound to collect the full face value of them, with interest, unless under special circumstances of excuse, to be shown by him. He should use reasonable and ordinary diligence for their collection, and, when collected, he should reimburse himself to the extent of his lien upon them, and pay over the surplus to the pledgor. If the pledged notes be assigned by the pledgee to some third person, with notice of the pledge, such person can take no greater right in the pledge than his assignor had, and, upon the collection of the notes, must pay to the pledgor the surplus after satisfying the debt for which they were originally pledged. Neither the pledgee nor his assignee can impose a greater burden on them than the satisfaction of the principal debt for which they were originally pledged, except by the consent of the pledgor. *Wheeler* v. *Newbould,* 16 N. Y. 392; *Fletcher* v. *Dickerson,* 7 Allen [Mass.] 23; *Nelson* v. *Wellington,* 18 N. Y. Super. Ct. 178; *Lamberton* v. *Windom,* 12 Minn. [Gil. 151] 232, 242 [90 Am. Dec. 301].

"It seems to us that the subject-matter of litigation is of equity cognizance. Kelly & Mills had no authority to discount the notes of Mrs. Roby. By so doing they committed a breach of trust and confidence, and Boswell, to whom the notes were sold at a sacrifice, participated in such wrong, and by so purchasing at a discount he became a trustee *in invitum.* 2 Pom. Eq. section 1044.

In *De Clark* v. *Waters,* 10 Wyo. 31, 65 Pac. 855, it was held that the act of a creditor holding amply secured notes of his debtor as collateral, in accepting a less sum than the amount due thereon from a solvent maker in full satisfaction thereof, does not preclude the latter from recovering the balance due from the maker.

114 Miss.—11

In *Powell* v. *Ong*, 92 Ill. App. 95, that court held that:
"Where the pledgee of a . . . note without authority effects a compromise with the maker, he must respond to the owner of such note for the value of it, and the burden of showing that the true value of the note is less than its face value is on the pledgee." Syllabus.

In *McLemore* v. *Hawkins, supra,* our court said:
"It is very questionable whether a valid sale of a note could be made to the maker at private sale. Such a transaction, without the consent of the pledgor, would be very conspicious, especially if the maker were solvent."

As to the second question: The undisputed testimony in this record shows that the witness Green had been informed that the three notes for one hundred dollars each belonging to Mrs. Eckert, appellant, had been left with appellee Searcy's attorney, Thompson, as security for the payment of the ninety-eight dollars and seventy cents indebtedness due on July 5, 1914, and that the witness Green had inferentially communicated this information to J. M. Lewis, the maker of the notes, by stating to him that the notes were not in the hands of Searcy. But it seems that the maker, Lewis, was anxious to obtain his notes, regardless of how Searcy had come into possession of them, so long as the notes were marked "paid," and when he was offered his three good notes, worth at least three hundred dollars for one hundred and twenty-five dollars, the very offer was sufficient to cause a reasonably prudent man to be suspicious of the transaction, and of the real ownership of the notes; and, if he had acted as a reasonably prudent man, he would have made inquiry as to the *status* of the notes; in fact, this was sufficient to put him upon inquiry, which is tantamount to notice. And more especially is this true when all the facts, circumstances, and surroundings of the situation are considered, together with what witness Green had said to the appellee Lewis in regard to where these notes were

prior to the time the alleged sale of them took place between the appellees Searcy and Lewis. So, it follows that the appellee Lewis got no more right or title in the three notes than the appellee Searcy had; and the extent of Searcy's interest in the three notes was to secure the payment of the ninety-eight dollars and seventy cents indebtedness due to him by the appellant, Mrs. Eckert, and appellee Lewis is accountable to Mrs. Eckert for the face value of the three notes. *Boswell* v. *Thigpen, supra.* The appellee Searcy, under whom the appellee Lewis claims, held the three one hundred dollar notes as security for a pre-existing debt, and was not a purchaser for value. *Bank* v. *Bank,* 106 Miss. 471, 64 So. 210; *Bank* v. *Strauss,* 66 Miss. 479, 6 So. 232, 14 Am. St. Rep. 79; *Hinds* v. *Pugh,* 48 Miss. 268.

One who purchases negotiable paper, without inquiry, when the circumstances are such as would excite the suspicions of a prudent man, does not stand in the position of a *bona fide* holder. *Mee* v. *Carlson,* 22 S. D. 365, 117 N. W. 1033, 29 L. R. A. (N. S.) 351, and authorities cited.

In *Jones* v. *Gordon,* 2 App. Cas. 616, 4 E. R. C. 416, Lord Blackburn says:

"But if the facts and circumstances are such that the jury, or whoever has to try the question, came to the conclusion that he was not honestly blundering and careless, but that he must have had a suspicion that there was something wrong, and that he refrained from asking questions, not because he was an honest blunderer or a stupid man, but because he thought in his own secret mind, 'I suspect there is something wrong, and if I ask questions and make further inquiry, it will no longer be my suspecting it, but my knowing it, and then I shall not be able to recover,' I think that is dishonesty."

It may be said that it must have reasonably appeared to the appellee Lewis in this case that something was wrong, when he was offered his own good paper, which had not matured, and which was secured, for a little

more than one-third of its face value. We think that ordinary care and diligence, and a reasonable respect for the rights of the payee in the notes, under the peculiar facts of this case, should have prompted appellee Lewis to make some inquiry as to the true status or ownership of the notes before he paid Searcy the one hundred and twenty-five dollars for the three notes executed by him to Mrs. Eckert.

In *De Witt* v. *Perkins,* 22 Wis. 474, the court said:

"The buying of a note against a solvent maker, the purchaser knowing him to be such, for a mere nominal consideration, is very strong, if not conclusive, evidence of *mala fides.* It is constructive notice of the invalidity of the note in the hands of the seller—such as to put the purchaser upon inquiry, which if he fails to make, he acts at his peril."

In view of these conclusions, the decree of the chancery court is reversed, and the case remanded, with instructions to carry out these views, to wit: The appellee Searcy is entitled to satisfaction of his indebtedness of ninety-eight dollars and seventy cents; the appellant, Mrs. Eckert, is entitled to the amount represented by the three one hundred dollar notes, less the ninety-eight dollars and seventy cents due to Sarcy; and appellees should pay to the appellant, Mrs. Eckert, the amount of the three notes, less the ninety-eight dollars and seventy cents due to Searcy. The appellees should be taxed with all the court costs.

*Reversed and remanded.*