**F. R. WRIGHT, Appellant,**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee.**

No. 17945.

United States Court of Appeals
Fifth Circuit.

May 20, 1960.

Rehearing Denied June 30, 1960.

Rives, Chief Judge, dissenting in part on rehearing.

L. A. Smith, Jr., Holly Springs, Miss., William E. Wilroy, Hernando, Miss., Smith & Hurdle, Holly Springs, Miss., for appellant.

Chester H. Curtis, Holcomb & Curtis, Clarksdale, Miss., for appellee, Southern Farm Bureau Cas. Ins. Co.

E. Cage Brewer, Jr., W. O. Luckett, Brewer, Brewer & Luckett, Clarksdale, Miss., for appellee, U. S. Fidelity & Guaranty Co.

Before RIVES, Chief Judge, and JONES and BROWN, Circuit Judges.

RIVES, Chief Judge.

This action was initiated by the United States Fidelity & Guaranty Company (U.S.F.&G.) to obtain a declaratory judgment with respect to its liability under a policy of insurance for injuries arising out of a collision involving its named insured, one F. R. Wright. The principal defendant in this declaratory judgment action was the Southern Farm Bureau Casualty Insurance Company (Southern), which had issued a policy of insurance to one Bill Brand covering the truck which Mr. Wright was driving at the time of the collision in question. Mr. Wright and Mr. Brand, as well as all persons injured in the collision, were made parties to the proceeding.

U.S.F.& G. sought a declaration that its liability under the "drive-other-car" provision of its policy with Wright was secondary and excess to the liability of Southern under the "omnibus" provision of its policy on the truck. As a defense to the action, Southern contended that its policy had been terminated and voided by the fact that Brand had, without notice to Southern, sold the truck to Wright.[1] The case was tried upon the single issue of whether, in fact, there had been such a sale. The district court found that there had been and, consequently, entered judgment for Southern. Wright has

---

1. It is admitted that the terms of Brand's policy with Southern provide for such a forfeiture where the insured vehicle is sold without notice to and permission of Southern.

prosecuted this appeal against both Southern and U.S.F.& G.[2]

The primary ground for reversal urged before this Court is that the district court erred in holding that Brand had sold the truck to Wright. Since we agree with this contention, we find it unnecessary to consider other difficulties presented by the case.

The basic facts surrounding the alleged sale are not in serious dispute. In October 1957, Brand was an employee of Wright on Wright's dairy farm in Desoto County, Mississippi. On October 7, 1957, Wright, at the request of Brand, bought a 1951 Ford pickup truck for Brand. Wright paid the purchase price for the truck directly to the automobile agency, paid for the license tag for the truck, and paid for the insurance on it. However, the truck was put in Brand's name, as were the license tag and the insurance. In the application for insurance, the name of Brand appeared as owner of the truck and that of Wright as a lienholder. As between Brand and Wright, it was understood that Wright had a lien upon the truck for the money which he had expended for the purchase price and other items, a sum of approximately $450, although no written mortgage was given by Brand to Wright. It was further understood that Brand was to pay to Wright twenty-five dollars a month until that sum was repaid.

In the latter part of May or first part of June 1958, Brand left the employ of Wright and obtained a job in Collierville, Tennessee, taking the truck with him to his new job. At the time he left Mississippi, Brand was already slightly in arrears in his payments to Wright. Shortly thereafter, Wright became unhappy with the situation and wrote to Brand

advising him to this effect. Thereupon, Brand returned to Mississippi to attempt to straighten out the matter. Upon his arrival, he was informed by Wright that Wright wanted the entire balance of the debt (which, at that time, amounted to approximately $350) immediately. Brand did not have that much money so he returned to Tennessee to try to borrow it from his new employer.

Brand failed in his attempt to raise the money and therefore returned to Mississippi for further negotiations with Wright. At this point in the narrative, the evidence becomes hazy. Wright's testimony at the trial was to the effect that he adhered to his demand that he be paid in full, that Brand offered instead to leave the truck with him until he could get the money, and that he agreed to this arrangement. On the other hand, Southern introduced a statement signed by Wright, saying: "When Bill left two weeks ago, he still owed me about $350.00 on the truck, so he just let me have the truck in place of the $350.00." This latter statement is, of course, subject to the interpretation that Brand transferred title to Wright in satisfaction of his debt.

Brand's testimony on direct examination was to the effect that he was never quite certain as to just what the understanding was with respect to the truck but that he had had no desire to relinquish his interest in it, nor did he feel at the time that he had done so. On cross-examination, however, he testified that he did consider that interest as having been relinquished and the ownership as having passed to Wright.[3]

On this state of the record, we need not determine whether the district court could reasonably have found that Brand

2. Under the finding of the district court, i. e., that Wright was the owner of the truck at the time of the accident, it is possible that no protection is afforded by either policy. The "drive-other-car" provision of the U.S.F.& G. policy is subject to the proviso that it shall not apply "to any automobile owned by * * * the Named Insured * * *."

3. A careful study of this testimony as it appears in the record reveals rather clearly that the apparent contradictions were due to the fact that Brand simply did not know what legal effect his actions had. The trial court was apparently of this same opinion, for it gave no indication that it did not fully credit Brand's testimony as to the facts.

had offered the truck in satisfaction of the debt during their last conversation, and that Wright had accepted that offer. Nor need we determine whether such a finding, though not compelled by the evidence, would have been invulnerable to attack under the "clearly erroneous" rule.[4] This is so because the district court did not make such a finding. Instead it found:

"That sometime between June 2nd and June 10th, 1958, and without any notice to, or consent of, the Southern Farm Bureau Casualty Insurance Company, the defendant, Bill Brand, delivered and transferred to the defendant, F. R. Wright, the 1951 Ford Pickup Truck, No. F1R1-MP29176 covered by policy No. M481066 of the Southern Farm Bureau Casualty Insurance Company issued under date of October 9, 1957, in payment of an indebtedness owing on said truck by Brand to Wright, and that thereafter Wright exercised dominion and control thereof and used the Ford Pickup Truck several times for his own personal use, which constituted an acceptance of said vehicle as payment of, or on, the said debt owing by Brand, and thereupon, F. R. Wright became the owner of said vehicle, all of which occurred prior to the accident which happened on July 15, 1958."[5]

It seems clear that this finding impliedly credits Wright's testimony that during his last conversation with Brand he refused to take the truck in satisfaction of the debt. It proceeds rather on the theory that Brand's oral offer of a transfer of title to the truck was accepted by Wright's conduct in using the truck for his personal business on several occasions after the conversation in which Wright had refused to take title to the truck. It is this finding which must be subjected to the clearly erroneous test and, when so subjected, it cannot stand.

■ It is clear that the district court's findings, interpreted in the light most favorable to the appellees, amounted, at the very most, to a determination that, when Brand left Mississippi after his last conversation with Wright, Wright had possession of the truck as a mere pledgee under a contract which gave him the right to appropriate the pledge to the debt if he chose to do so. At the same time, however, the uncontroverted testimony of both Wright and Brand was to the effect that Wright could use the truck without altering the legal relationship between the parties. And Wright testified that his use of the truck was merely temporary and that he never intended to appropriate the truck to satisfy the debt. This testimony likewise stands uncontroverted in the record.

4. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

5. The intent of this finding is made more definite by the oral opinion of the court delivered at the conclusion of the argument of counsel:

"The Court: Up to the time it was called to my attention I had overlooked the fact that testimony showed Mr. Wright had used the truck on two or three occasions before having this accident, my judgment was that plaintiff was not entitled to prevail.

"Under the law, regardless, the very best that could be said for Wright's position, is, he took this truck as acceptance for security.

"When he used it as his own, for his own use, on three or four different occasions—one occasion I could overlook—

but when he used it three or four times for his own use and whenever he felt he needed it and wanted it, I think then he made it a complete transaction. He had accepted, by taking possession and using it, and it was his truck at the time of the accident. Therefore, in my judgment, plaintiff is entitled to prevail and have a decree.

"Mr. Curtis: If Your Honor please, the plaintiff is U.S.F.& G. You mean Southern Farm Bureau Casualty Insurance Company.

"The Court: Yes, that's right. I think it shows clearly Mr. Brand had accepted the truck for his own by taking it on three or four occasions, under his testimony, whenever he felt like he needed it.

"Mr. Curtis: You mean Mr. Wright.

"The Court: Yes, sir. Mr. Wright."

We are thus confronted with a situation in which the only evidence of an appropriation of the truck by Wright is entirely ambiguous. Since Wright was given both the power to appropriate the pledge and the privilege to use it without appropriation, his decision to use it may be equally well justified under either of these theories. The use of the truck cannot, therefore, constitute evidence of appropriation. In such a situation, the district court could not reject Wright's own explanation of the nature of the use,[6] and its decision to do so must be set aside as clearly erroneous.

■ This conclusion is further reinforced when the case is considered in the light of the public policy of Mississippi. Three separate policies seem to be involved, each of which tends toward the view that a sale should not be inferred on the facts of this case. First, and most important, is the presumption of innocence of crime.[7] Section 8065 of the 1942 Mississippi Code provides that it shall be a criminal offense to sell, purchase or own any automobile unless the seller shall furnish to and the buyer shall take and reserve a written memorandum signed by the seller showing the details of the transaction. No such memorandum having been made here, the transaction as found to have occurred by the district court amounted to the commission of a crime by both Brand and Wright. Secondly, the alleged sale runs contrary to the policy against transactions between a pledgor and a pledgee with respect to pledged property.[8] Finally, the policy against forfeiture of insurance is applicable.[9] These policies, though not in themselves determinative of the issue presented, are quite persuasive when considered in the light of the testimony in the record.

Thus, Southern's defense to U.S.F.& G.'s suit for a declaratory judgment based upon the termination of its policy cannot prevail. The district court did not reach the question of which insurance company has primary liability, and the question is not discussed in the briefs before this Court. In order that that question can now be passed upon with adequate consideration, the case is

Reversed and remanded.

On Petition for Rehearing.

PER CURIAM.

The petition for rehearing in the above styled and numbered cause is hereby Denied.

.

RIVES, Chief Judge (concurring in part and dissenting in part).

Upon further consideration, I am in so much doubt both as to the intent of the district court's findings of fact, and as to what the true facts are, that I would accede to appellee's final point in its petition for rehearing:

"Point 12: If this cause is to be reversed as to the finding of fact of the trial court, then we submit that justice and equity require that it should be reversed for a re-trial of all facts and submission to the trial court for a more specific and definite finding of fact."

In all other respects, I agree that the petition for rehearing should be denied.

---

6. Compare Burford-Toothaker Tractor Co. v. Commissioner of Internal Revenue, 5 Cir., 1951, 192 F.2d 633, with J. H. Robinson Truck Lines v. Commissioner of Internal Revenue, 5 Cir., 1950, 183 F. 2d 739.

7. See Mississippi Power Co. v. Sellers, 160 Miss. 512, 133 So. 594.

8. The general rule which discourages such transactions (see 72 C.J.S. Pledges § 45 p. 83) seems to be recognized in Mississippi. See Eckert v. Searcy, 1917, 114 Miss. 150, 74 So. 818.

9. See, e. g., Section 8285–21(f) (1), Mississippi Code 1942.