523 So.2d 29 (1988)
Harold Conner CAIN, et al.
v.
Arlan ROBINSON.
No. 57494.
Supreme Court of Mississippi.
March 2, 1988.
Rehearing Denied April 27, 1988.
*30 W. Joel Blass and Cynthia L. Tolbert, Mize, Thompson & Blass, Gulfport, Minor C. Sumners, Jr. and Roger Googe, Overstreet & Kuykendall, Jackson, for appellants.
Charles Galloway, Galloway & Galloway, Gulfport, and Charles K. Pringle, Biloxi, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
Arlan Robinson filed a declaratory judgment (Rule 57 M.R.C.P.) complaint in the Chancery Court of Stone County where he named as defendants Harold Conner Cain; H.T. Cain; the First National Bank of Wiggins; Gwendolyn J. Waits, Trustee for the benefit of Arlan Robinson; First National Bank of the South; and Oscar Gold, Trustee for the benefit of the First National Bank of the South. The Chancellor entered judgment in favor of Robinson. From that judgment Harold Conner Cain, H.T. Cain, and the First National Bank of Wiggins appeal.
*31 The cast of characters in this comedy of errors is as follows:

Arlan Robinson was plaintiff below and is appellee here. [Robinson]

Harold Conner Cain and H.T. Cain, father and son, were defendants below and are appellants here. [Cains]

First National Bank of Wiggins  a banking corporation having its principal place of business in Wiggins, Mississippi  was defendant below and is appellant here. [FNB-Wiggins]

First National Bank of the South  a banking corporation having its principal place of business in Ocean Springs, Mississippi  was defendant below. FNB  South has failed to designate whether it is appellant or appellee here. Its position is that of appellee, because it prevailed below and thus would prefer that the judgment be affirmed. [FNB-South]
On January 18, 1980, Robinson sold 300 acres of land to the Cains. Part of the purchase price was deferred, so the Cains executed a $300,000.00 promissory note and executed a deed of trust to Gwendolyn J. Waits as trustee with Robinson as beneficiary. The terms of the promissory note were that the $300,000.00 was to be paid in ten (10) annual installments of $30,000.00 each, plus accrued interest at ten percent (10%) per annum; annual payments were due January 19 of each year, with the first payment to be made January 19, 1981. The Cains made the first two scheduled payments of $30,000.00 plus accrued interest on January 19, 1981, and January 25, 1982, and thereby reduced the principal balance on the Cains to Robinson note to $240,000.00.
The first tangle in what has become a financial Gordian knot occurred when Robinson  seller of the property, holder of the note, and beneficiary of the deed of trust  decided to borrow some money from FNB-Wiggins, using the Cains to Robinson note and deed of trust as collateral. Although Robinson borrowed much less than the face value of the note (the balance on the note was $240,000.00 plus accrued interest and Robinson borrowed approximately $75,000.00), and although Robinson and FNB-Wiggins intended the note and deed of trust to be assigned to FNB-Wiggins as collateral only, nevertheless, Robinson executed in favor of FNB-Wiggins what is on its face, an absolute, unconditional assignment of the Cains to Robinson note and deed of trust. The assignment was recorded in the Stone County Chancery Clerk's Office, and a marginal notation of the assignment was made on the face of the Cains to Robinson deed of trust, which had also been filed in the Stone County Chancery Clerk's Office. This assignment, which appeared to be absolute although it was intended only as collateral, was prepared by FNB-Wiggins. After the note and deed of trust were assigned to it, FNB-Wiggins notified the Cains, apparently by telephone, that Cains were to make future payments on the note to FNB-Wiggins. The FNB-Wiggins bank president did not recall whether he in notifying the Cains characterized the assignment as absolute or conditional. Harold Conner Cain testified that he was never told the assignment was anything other than absolute.
As instructed, the Cains made their check for the January 19, 1983 installment payable to FNB-Wiggins. A notation on the check recited "For Arlan Robinson note." That payment reduced the principal balance on the Cains to Robinson note to $210,000.00.
The knot began to tighten in September of 1983, when Cains decided to borrow $2.1 million from FNB-South, a bank which, to that point, had not been involved in any of the transactions at issue here. FNB-South required as security for loan to Cains first liens on several parcels of property, including that secured by the Cains to Robinson note, part of the loan proceeds from FNB-South to the Cains to be disbursed were to pay off the Cains to Robinson note and deed of trust so FNB-South would have first lien on the 300 acres.
Tom Matthews, FNB-South's attorney, checked title to the 300 acres and discovered that the Cains to Robinson note and deed of trust had been assigned to FNB-Wiggins. Because the assignment appeared to be unconditional, Matthews concluded *32 that FNB-Wiggins owned the note and deed of trust. Matthews then telephoned FNB-Wiggins to ask for the pay-off amount on "the note". What happened during that call is disputed. Matthews testified at trial that when he telephoned FNB-Wiggins he asked for "a pay-off of the deed of trust that had been initially given by Cains to Arlan Robinson and assigned to the [FNB-Wiggins]." The president of FNB-Wiggins, however, testified that Matthews asked for the pay-off on "the Arlan Robinson note." The Chancellor found that Matthews asked for the pay-off on the Cains to Robinson note that had been assigned to FNB-Wiggins. The pay-off figure which FNB-Wiggins quoted to Matthews was $75,906.50. This was actually the pay-off on Robinson's note to FNB-Wiggins, which was secured by the Cains to Robinson note and deed of trust. The Chancellor found that FNB-Wiggins was in error in quoting that figure since Matthews had asked for the pay-off on the Cains to Robinson note, the principal balance on which was $210,000.00, plus accrued interest.
When Matthews told the Cains that the pay-off was $75,906.50, they had him check again, although they did not tell Matthews or anyone else that the pay-off should have been much higher. Harold Conner Cain claimed he believed the amount was correct because he "assumed" Robinson had discounted the note when he sold it to FNB-Wiggins.
FNB-South made the loan to the Cains; closing occurred on September 29, 1983. As part of that closing, Matthews' law firm issued a check on its trust account payable to FNB-Wiggins in the amount of $75,906.50. Matthews' secretary was instructed to type on the check this notation: "Pay-off Cain DT to Robinson Assg. to 1st National Bnk of Wiggins." However, the secretary inadvertently typed "Pay-off Robinson DT to Cain Assg. to 1st National Bnk Wiggins." Of course, there was no "Robinson deed of trust to Cain." FNB-Wiggins endorsed the check, applied it in full payment of Robinson's debt to FNB-Wiggins, and gave the Cains credit for that amount on Cains' note owing to Robinson.
At that point, FNB-South believed it had a first lien on the 300 acres. This belief was based on 1) the fact that a title search indicated that the Cains to Robinson note and deed of trust had been unconditionally assigned to FNB-Wiggins, and 2) the fact that, when asked for a pay-off on the Cains to Robinson note assigned to it, FNB-Wiggins gave a figure of $75,906.50 as the pay-off figure. That amount having been paid to FNB-Wiggins, FNB-South understandingly believed it held the first lien on the 300 acres.
There is one final tangle in the knot. Because the $75,906.50 check paid off Robinson's debt to FNB-Wiggins, that bank executed a "Cancellation of Assignment of Annual Installment Note and Deed of Trust." This instrument cancelled Robinson's assignment to FNB-Wiggins of the Cains to Robinson note and deed of trust. The deputy chancery clerk of Stone County, however, marked the Cains to Robinson deed of trust cancelled, based on the instrument which cancelled only the assignment. This final twist is actually not of significant consequence to this appeal since it occurred three weeks after the closing of the FNB-South loan, and FNB-South admitted that it could not have relied on a marginal notation entered on the deed of trust three weeks after it disbursed the loan proceeds. Clearly, FNB-South relied on 1) the recorded unconditional assignment and 2) the erroneous pay-off quoted by FNB-Wiggins of $75,906.50.
On August 17, 1984, Robinson filed a Complaint for Declaratory Judgment under Rule 57 M.R.C.P. in the Chancery Court of Stone County. Named as defendants were the Cains, FNB-Wiggins, FNB-South, the trustee of the Cains to Robinson deed of trust, and the trustee of the Cains to FNB-South deed of trust. In that Complaint, Robinson sought the following relief:
a) that the court declare that the Robinson to FNB-Wiggins assignments of the Cains to Robinson note and deed of trust were not absolute but were for collateral only;

*33 b) that the court declare that the Cains to Robinson deed of trust remained a first deed of trust prior and superior to the Cains to FNB-South deed of trust on the same property;
c) that if the court find that FNB-Wiggins' acceptance of the $75,906.50 served to pay off the Cains to Robinson note and deed of trust, that the court would also find FNB-Wiggins, by so accepting payment, breached its fiduciary duty to Robinson, and that FNB-Wiggins therefore was indebted to Robinson for the unpaid principal and interest, for which Robinson should be awarded judgment [Here Robinson appears to pray for a money judgment against FNB-Wiggins]; and
d) that Robinson recover costs and reasonable attorney's fees.
The Cains cross-claimed against FNB-Wiggins asking, in essence, indemnification as to any liability the Cains might have to Robinson.
After a hearing on the merits, the trial court found, inter alia:
1) that FNB-Wiggins had negligently mishandled the security instruments involved;
2) that Robinson had executed and delivered an unqualified assignment to FNB-Wiggins;
3) that FNB-South was an innocent third party who closed the $2.1 million loan to the Cains in reliance on the erroneous pay-off figure quoted by FNB-Wiggins;
4) that Robinson clothed FNB-Wiggins with apparent authority to quote and accept a pay-off figure on the Cains to Robinson note and to cancel same; and
5) that the Cains had sufficient knowledge of the actual pay-off figure that they should have inquired further when they heard the erroneous pay-off quote.
Based on these findings the Chancellor entered a final judgment providing:
1) that Robinson would retain ownership of the Cains to Robinson note on which the Cains owed $148,648.59 as of the date of judgment;
2) that Robinson was entitled to recover from the Cains attorney's fees as provided for in the promissory note, being 15% of the total amount of principal and interest in default as of the date of judgment;
3) that Robinson was awarded a money judgment against the Cains in the amount of $110,687.15, being principal payments they had failed to make, interest, and attorneys fees;
4) that the Cains to Robinson deed of trust would remain a lien upon the 300 acres until the Cains to Robinson note was paid off;
5) that the Cains to FNB-South deed of trust would be superior to the Cains to Robinson deed of trust; and
6) that FNB-Wiggins would be secondarily liable to Robinson for any loss he incurred by the subordination of his lien to that of FNB-South.
From that judgment the Cains appeal, and FNB-Wiggins appeals. Significantly, Robinson does not cross-appeal; therefore, he does not challenge the Chancellor's holding that FNB-South's deed of trust is superior to his.

I. THE CAINS' APPEAL
Harold Conner Cain and H.T. Cain appeal, assigning two (2) errors:

A. DID THE TRIAL COURT ERR IN GRANTING JUDGMENT AGAINST THE CAINS AFTER THE TRIAL COURT DETERMINED 1) THAT THE ROBINSON TO FNB-WIGGINS ASSIGNMENT OF THE CAINS TO ROBINSON NOTE WAS UNCONDITIONAL, AND 2) THAT FNB-WIGGINS NEGLIGENTLY QUOTED THE WRONG FIGURE WHEN ASKED FOR THE PAY-OFF ON THE CAINS TO ROBINSON NOTE?
The thrust of the Cains' argument is this: because Robinson unconditionally assigned the Cains to Robinson note to *34 FNB-Wiggins, and because the Cains paid the figure which FNB-Wiggins quoted to FNB-South (erroneously) as the pay-off on that note, the Cains to Robinson note is discharged, and they do not owe Robinson any more money.
Although the Cains have not articulated a theory to support their most untenable position, the only possible theory is equitable estoppel. Aside from the fact that they are attempting to use FNB-Wiggins' misquote to estop Robinson, the Cains have another problem: the essential elements of equitable estoppel are conduct and acts, language or silence, amounting to a misrepresentation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that the representation or silence or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence. Chapman v. Chapman, 473 So.2d 467, 469-70 (Miss. 1985).
Obviously, intent and detrimental reliance are missing in the case at bar. The assignment of error is ludicrous. Compare Vinson v. McCarty, 413 So.2d 1026 (Miss. 1982) (payment to assignee not effective to discharge debt where assignment given as security).

B. DID THE TRIAL COURT ERR IN AWARDING ROBINSON A MONEY JUDGMENT AGAINST THE CAINS WHEN NO SUCH RELIEF WAS SOUGHT IN THE COMPLAINT?
Robinson, in his amended complaint, alleged that the Cains were in default and that he was "entitled to recover the sum of $210,005.84." Although this allegation appears in the body of the complaint, the actual prayer for relief includes no demand for a money judgment against the Cains, it does include a prayer for general relief. Nevertheless, the trial court awarded Robinson a money judgment against the Cains in the amount of $110,687.15. (The Cains argue on appeal that the trial court erred in awarding Robinson a money judgment when such was not requested.)
Authority which the parties do not cite, Miss.R.Civ.P. 54(c), provides in part that
[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such, relief in his pleadings; however, final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings.
The underlined provision does not appear in the federal counterpart to our rule. Fed.R. Civ.P. 54(c).
Federal courts construing the federal counterpart to our Rule 54(c) have held that a party may be awarded the damages established by the pleadings or the proof even though only injunctive relief was demanded in the complaint, unless such damages are foisted upon the parties by the court or unless the failure to demand such relief prejudiced the opposing party. Rohm and Haas Company v. Dawson Chemical Company, Inc., 557 F. Supp. 739, 849 (S.D.Tex. 1983); Robinson v. Lorillard Corp., 444 F.2d 791, 802-03 (4th Cir.1971). See also Wright, Miller & Kane, Federal Practice and Procedure § 2664 (damages may be given in suit seeking declaratory judgment).
The applicability of these federal authorities is limited somewhat by the following language, which appears in our Rule 54(c) but not in its federal counterpart: "final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings."
Robinson alleged in his complaint that he was entitled to recover a certain amount from the Cains, and although in his prayer for relief he did not demand that amount or any monetary judgment against the Cains it is clear from his complaint that his allegations give rise to such a demand and posed no surprise to Cains. The language of 54(c) does not preclude an award of monetary damages to Robinson. That portion of the judgment is affirmed.

*35 II. FNB-WIGGINS' APPEAL
FNB-Wiggins appeals, raising three (3) issues:

A. WAS THE FINDING OF THE CHANCELLOR CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?

B. DID THE CHANCELLOR ERR IN FINDING THAT FNB-WIGGINS NEGLIGENTLY MISHANDLED SECURITY INSTRUMENTS, THEREBY VIOLATING ITS FIDUCIARY "STATUS"?
In these first two assigned errors, FNB-Wiggins actually makes two arguments: 1) that the Chancellor was manifestly wrong in finding that Matthews asked for the pay-off on the Cains to Robinson note, and 2) that the Chancellor erred in holding FNB-Wiggins liable for negligently handling security instruments and negligently quoting the wrong pay-off.
As to the factual argument, Tom Matthews testified that he asked for the pay-off on the Cains to Robinson note that had been assigned to FNB-Wiggins. Given this evidence, the Chancellor was certainly warranted in finding as he did.
In its legal argument, FNB-Wiggins offers numerous theories which, it claims, negate any liability on its part. For instance, FNB-Wiggins asserts that because it was not in a fiduciary relationship with FNB-South, it cannot be liable for misquoting a pay-off to FNB-South. This argument ignores the obvious: FNB-South is not suing FNB-Wiggins, Robinson is. Similarly, FNB-Wiggins argues that, if the assignment did not reflect the true agreement between FNB-Wiggins and Robinson, then Robinson's proper remedy is reformation. Again, the argument misses the mark. Robinson is not suing FNB-Wiggins on the assignment, rather, he is suing them because they were negligent with regard to the assignment, and he was damaged thereby.
The parties fail to cite the controlling law. Article Nine of the Uniform Commercial Code governs the relationship between FNB-Wiggins and Robinson. That Article applies "to security interests created by contract including ... assignment... ." Miss. Code Ann. § 75-9-102(2) (1972). Because Article Nine is applicable, FNB-Wiggins was charged with the duties imposed by Miss. Code Ann. § 75-9-207(1) (1972), which provides as follows:
A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.
In a case strikingly similar to the one at bar, this Court applied § 75-9-207, although the liability of the secured party was not at issue. Vinson v. McCarty, 413 So.2d 1026 (Miss. 1982).
Under § 75-9-207(1), FNB-Wiggins had a duty to preserve the value of the note and deed of trust assigned to it, a duty which it breached by 1) preparing and filing in the land records an assignment which was unconditional when it was actually supposed to be only as security, and 2) quoting an erroneous pay-off figure to Matthews. Although there may be an issue of contributory negligence as to the first breach, FNB-Wiggins did not raise that defense. According to the Chancellor's ruling, Robinson's lien became subordinated to FNB-South's lien. This subordination resulted from FNB-Wiggins' negligent acts. Thus, Robinson suffered damages proximately caused by FNB-Wiggins' breach of its § 75-9-207 duty of reasonable care. The Chancellor was correct in holding FNB-Wiggins liable.

C. DID THE CHANCELLOR ERR IN SUBORDINATING ROBINSON'S LIEN TO FNB-SOUTH'S LIEN?
Robinson has not cross-appealed the Chancellor's ruling that his lien is now subordinate to FNB-South's. FNB-Wiggins, however, does challenge that ruling, since its liability to Robinson arises only because its negligence resulted in subordination of Robinson's lien. In other words, if Robinson's lien had retained its superiority, then *36 Robinson could show no damages resulting from FNB-Wiggins' negligence.
The following are the Chancellor's findings and rulings as to which deed of trust (Robinson's or FNB-South's) should have priority:
The Cains' note and deed of trust held by the Bank of the South are not in question, and this Court is of the opinion and rules that the Bank of the South deed of trust should be recognized and adjudicated to have the priority of a first lien, superior to any other on the Robinson Farm property, or any other property here involved.
The Court further is of the opinion and rules that the First National Bank of Wiggins negligently mishandled the security instruments in this case, and that it violated its fiduciary status thereby. The Court further is of the opinion and rules that Arlan Robinson contributed to the series of misunderstandings and errors which inevitably required judicial intervention in this case. By executing and delivering an unqualified assignment to First National Bank of Wiggins, Robinson allowed that bank to appear as the owner of the Cains note to Robinson and the deed of trust securing said note.
The First National Bank of the South is an innocent third party who, in reliance on the apparent authority of the First National Bank of Wiggins to quote a payoff figure for the Cains note to Robinson, closed a loan in the amount of $2,100,000.00 and accepted as security for the debt a deed of trust it believed to be a first lien on the Robinson Farm. Robinson clothed First National Bank of Wiggins with apparent ownership or authority to quote and to accept a payoff figure for the Cains note, and to cancel the Cains deed of trust to Robinson, and is estopped to deny that the deed of trust held by First National Bank of the South is a first and prior lien on the Robinson Farm.
.....
As between Robinson and First National Bank of the South, the Bank of the South retained its priority, and the Cains deed of trust to Robinson remained valid but subordinate to the deed of trust to Bank of the South.

CONCLUSION
Robinson by making an unconditional assignment of his note and deed of trust to FNB-Wiggins and the filing of that assignment on the records in the Chancery Clerk's Office of Stone County conjunctive with the erroneous pay-off figure given by FNB-Wiggins to the closing attorney for FNB-South leads us to the conclusion that the Robinson deed of trust should be subordinated to the FNB-South deed of trust: Further, FNB-Wiggins which gave the wrong pay-off figure to FNB-South's attorney, will be liable to Robinson on Cains' note to Robinson secondarily to the extent that the Cains fail to pay any portion of the original note from Cains to Robinson.
The findings and judgment of the Chancellor were all supported by substantial evidence and the Chancellor was not manifestly wrong in any way and his well reasoned opinion and judgment are affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.