' KITCHENS, Justice,
for the Court:
¶ 1. The plaintiffs (collectively “Tellus”) alleged that they owned the “shallow gas” rights from the earth’s surface to a depth of 8,000 feet in a tract of land known as the Bilbo A Lease. While ownership of the shallow gas was disputed, all parties agreed that the defendants (collectively “TPIC”) owned the gas rights below 8,000 feet and the oil rights in both the shallow and ■ deep zones. In 2004, Tellus sued TPIC, alleging that it had produced Tel-lus’s shallow gas through one if its wells known as the A-l well. After much pretrial litigation and a two-month jury trial, the trial judge declared that the plaintiffs were the rightful owners and submitted the plaintiffs’ conversion and negligence claims to a jury. The jury returned a general verdict in favor of the defendants, and both sides appealed. Finding no reason to reverse, we affirm the jury verdict and the trial court’s declaratory judgment.
Summary of Facts
¶ 2. At trial, Tellus sought to prove that, from 1995, when it acquired ownership, to 2004, TPIC had wrongfully depleted the natural gas in the shallow zone of the Bilbo A Lease.[1] According to Tellus, TPIC had falsely reported that the gas produced from its A-l well originated in the deep zone. Tellus also alleged that, in furtherance of its tortious conduct, TPIC wrongfully allocated some of the gas to its A-13 well and commingled the remaining gas with gas from other wells.
¶ 3. TPIC countered with evidence that the only gas produced by the A-l well came from the deep zone and that there was no gas in the shallow zone for TPIC to produce. The defendants also argued that, even if Tellus’s claims were true, the statute of limitations had expired, because all of the shallow gas had been depleted by 2001.
Issues on Appeal
¶ 4. Tellus raises six issues on direct appeal: (1) the jury instructions misstated the burden of proof for commingling; (2) special interrogatories prevented the jury from returning a general verdict in the plaintiffs’ favor; (3) two unlicensed engineers testified as experts for the defendants in violation of Mississippi criminal law; (4) TPIC’s expert witness, Rick Garza, offered undisclosed expert testimony at trial; (5) evidence of a defense witness’s bias was improperly excluded; and (6) the trial court erred by excluding evidence of lost profits. On cross-appeal, TPIC argues that the circuit court lacked the authority to enter a declaratory judg *277 ment. It also argues that, should this Court reverse the jury’s verdict, we should affirm the judgment in favor of the defendants Bruce Sallee and William Crawford because there was insufficient evidence to support a finding of individual liability.
Discussion
¶ 5. As an initial matter, TPIC asserts that this Court cannot reverse the jury’s general verdict unless Tellus shows error with each of TPIC’s theories of defense. Specifically, TPIC argues that any error with regard to the liability issue does not warrant reversal of the jury’s verdict because the jury could have found that: (a) Tellus’s case was barred by the statute of limitations; (b) there was no gas in the Bilbo A Lease’s shallow zone, and/or (c) TPIC’s employees did not engage in any wrongful conduct.
¶ 6. TPIC is relying on the so-called “two-issue rule,” expounded by the Florida Supreme Court. Barth v. Khubani, 748 So.2d 260, 261-62 (Fla.1999) (citations omitted). The parties dispute whether the rule applies in Mississippi but agree that it requires either distinct theories of liability leading to the same measure of damages or separate, distinct defenses that completely bar recovery. See Id. at 262 n. 7 (“[T]he rule does not apply where there is only one cause of action or one separate and distinct defense theory.”) (citation omitted). Despite TPIC’s arguments to the contrary, its defense theories overlapped;[2] therefore, the “two-issue rule” does not apply.
I. Jury Instructions
¶ 7. Tellus argues that the trial court committed reversible error by instructing the jury on the doctrine of commingling and by submitting special interrogatories on the issue of damages. We agree with the defendants that, because both points of error concern damages only, the general verdict in favor of the defendants precludes appellate review. This Court has held that we will not consider alleged erroneous instructions on the measure of damages when the jury finds in favor of the defendant on the issue of liability. Am. Creosote Works v. Rose Bros., 211 Miss. 173, 177, 51 So.2d 220, 223 (1951).
¶ 8. As for commingling of goods, Tellus argues that instructions improperly placed the burden on the plaintiffs to demonstrate their share of commingled gas. Cf. Peterson v. Polk, 67 Miss. 163, 6 So. 615 (1889) (where defendant commingled plaintiffs staves with his own, and the goods were impossible to separate, plaintiff was not required to identify her staves). Assuming the doctrine applies in this case, Tellus was first required to prove liability, specifically, that TPIC had wrongfully commingled its deep-zone gas with Tellus’s shallow-zone gas. The rule also applies to Tellus’s second point of error. By means of the special interrogatories, the jury was instructed to separate damages by year. As with the issue of commingling, the jury was required to find liability before answering these interrogatories. Because the first two issues concern jury instructions on the measure of damages, we will not reverse the judgment in light of the jury’s finding in favor of the defendants on the threshold issue of liability.
II. Evidentiary Issues
¶ 9. Tellus’s remaining four issues concern evidentiary matters. Generally speaking, this Court will not reverse a *278 judgment based on the admission or exclusion of evidence, unless the appellant demonstrates that the trial judge’s ruling amounts to a prejudicial abuse of discretion. Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1128 (Miss.1995) (citations omitted). See also M.R.E. 103(a) (“Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.... ”). However, the trial court must employ the proper legal standards. McMillan v. Rodriguez, 823 So.2d 1173, 1177 (Miss.2002) (citations omitted). Questions of law, such as statutory interpretation, are subject to a de novo standard of review. Laurel Ford Lincoln-Mercury, Inc. v. Blakeney, 81 So.3d 1123, 1125 (Miss.2012) (citing Hedgepeth v. Johnson, 975 So.2d 235, 237 (Miss.2008)).

A. Professional License

¶ 10. Tellus avers that the trial judge should have disallowed the expert testimony of TPIC’s petroleum engineers, arguing that an engineer’s providing expert testimony without a Mississippi license is a crime under the Mississippi Code. Miss. Code Ann. §§ 73-13-1, 73-13-39 (Rev. 2008). TPIC responds that the Mississippi Rules of Evidence govern the admission of expert testimony, citing several cases from this Court which hold that professional licensure status does not disqualify an expert under Rule 702. See e.g., Investor Res. Servs., Inc. v. Cato, 15 So.3d 412, 419 (Miss.2009) (accountant’s licensure status “not crucial” to her qualifications as an expert witness).
¶ 11. Sections 73-13-1 through 73-13-45 of the Mississippi Code make it unlawful to “practice engineering” without a Mississippi license. The statutory definition of the “practice of engineering” includes “expert technical testimony evaluation.” Miss.Code Ann. § 73-13-3 (Rev. 2008). It is a misdemeanor “to practice, or offer to practice, engineering in this state without being licensed” by the Mississippi Board of Licensure for Professional Engineers and Surveyors. Miss.Code Ann. § 73-13-39. The punishment for such crime may include a fine of up to $5,000, investigative expenses, court costs, and imprisonment for up to three months. Miss. Code Ann. § 73-13-39.
¶ 12. This Court consistently has held that a witness may be qualified to provide expert testimony regardless of his or her professional licensure status. See e.g., Cato, 15 So.3d at 417-18 (unlicensed accountant); Blake v. Clein, 903 So.2d 710, 727-28 (Miss.2005) (physician not licensed to practice in the United States); Watts v. Lawrence, 703 So.2d 236, 238-39 (Miss.1997) (unlicensed real estate appraiser). Tellus argues that these cases are distinguishable because none of the licensing statutes at issue criminalized expert testimony without a license.
¶ 13. This exact issue is a matter of first impression.[3] This Court is aware of only two other states, New Mexico and South Carolina, that provide criminal penalties for testifying as an engineering expert without a state license. N.M.Code Ann. §§ 61-23-24(J), 61-23-3(E) (Supp. 2006); S.C.Code Ann. §§ 40-22-20(22), 40-22-30 (Supp.2011).[4] Appellate courts in *279 both states have held that these statutes do not apply to expert testimony offered in a court of law. Baggerly v. CSX Transp. Inc., 370 S.C. 362, 635 S.E.2d 97, 102-04 (S.C.2006); Baerwald v. Flores, 122 N.M. 679, 930 P.2d 816, 819 (1996).
1114. In Baggerly, 635 S.E.2d 97, the South Carolina Supreme Court found that its state licensing statutes for engineers, which criminalized “expert technical testimony,” did not apply to judicial proceedings. The court offered several reasons for its decision. First, it found that the purpose of the statute was to shield consumers, and that the witness’s “services were being offered to a South Carolina jury, not to the State’s citizens seeking traditional professional engineering services.” Id. at 103. The court also held that to exclude such testimony would clearly contravene and place a significant limitation on Rule 702 of the South Carolina Rules of Evidence. Id. at 103-04. “This singling-out of one type of expert witness seems to us to be an absurd result. ...” Id. at 104. Finally, perhaps the most compelling reason for its holding:
[I]f we held that exclusion of an out-of-state professional engineering expert is proper under the statute, the result would be to limit the truth-seeking duty of the courts of this State. We can envision numerous litigation scenarios where a party’s position might only be supported by the expert testimony of an engineer licensed and practicing outside the state of South Carolina. Yet, experts are intended to assist juries. We refuse to endorse an interpretation of the professional engineer licensing statute which has the potential of either preventing out-of-state experts from testifying in South Carolina courts or imposing the unreasonable burden of getting licensed in this State simply to be permitted to provide forensic testimony.
Id. (emphasis in original).
¶ 15. Faced with an almost identical issue, the New Mexico Court of Appeals took a similar position. Baerwald, 930 P.2d at 819. The court found that the New Mexico Supreme Court governs the admissibility of evidence by the procedural rules it adopts, and when a statute and a rule of evidence conflict, the state supreme court’s rules will govern. Id. (citing State ex rel. Reynolds v. Holguin, 95 N.M. 15, 618 P.2d 359, 361 (1980)). Therefore, despite the New Mexico statute’s prohibition of “expert technical testimony” from an unlicensed engineer, the trial court did not err by finding the witness qualified to give expert testimony. Id. (citing N.M.Code Ann. § 61-23-3(E)).
¶ 16. We agree with these courts that the statutory prohibition against an engineer’s providing “expert technical testimony” without a Mississippi license has no bearing on whether a witness is otherwise qualified as an expert under Mississippi Rule of Evidence 702. Cf. King v. Murphy, 424 So.2d 547, 550 (Miss.1982) (“An expert witness who is knowledgeable of, and familiar with, the state-wide standard of care shall not have his testimony excluded on the ground that he does not practice in this state.”). Mississippi Code Section 73-13-1 states that the purpose of requiring a Mississippi license is “to safeguard life, health, and property, and to promote the public welfare.” This explicit objective is not furthered by restricting evidence in a judicial proceeding between private parties. In judicial proceedings, our rules of evidence govern, and we find no error in the admission of the expert testimony, despite the statutory prohibition.

*280
B. Surprise Testimony

' ¶ 17. To prove its theory that the defendant could not have produced gas from the deep zone, Tellus introduced evidence of an obstruction in the A-l well. This obstruction, called a “fish,” was located just above 8,000 feet. Tellus argued at trial that the “fish” completely had blocked the flow of oil or gas from below because the “fish” was not stained with oil when it eventually was removed from the well. To counter this assertion, one of TPIC’s expert witnesses, Rick Garza, testified that the absence of staining on the “fish” did not support Tellus’s theory that the deep zone’s oil and gas were inaccessible. Garza opined that the significant amounts of hot water extracted along with the oil would have removed any oil stains.
¶ 18. Tellus argues that this portion of Garza’s testimony was inadmissible because it was an unfair surprise that went beyond the scope of his report. When disclosing expert opinions, a party is obliged to “state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.” M.R.C.P. 26(4)(A)(i). Trial testimony that goes beyond this response is not allowed and may result in reversible error. Canadian Nat’l/Ill. Cent. R. Co. v. Hall, 953 So.2d 1084, n1097 (Miss.2007) (citing Coltharp v. Carnesale, 733 So.2d 780, 786 (Miss.1999); T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 950-51 (Miss.1992)). Likewise, “where the stated subject matter in the response necessarily includes the subject matter testified to at trial, it is an abuse of discretion to exclude the expert’s testimony.” Id. (quoting Buskirk v. Elliott, 856 So.2d 255, 264 (Miss.2003)).
¶ 19. Garza’s pretrial report gave a very detailed account of his opinion that any oil and gas produced from the Bilbo A-l well, during the period in question, originated below 8,000 feet. During trial, Tellus made several objections to the scope of TPIC’s questioning on issues other than the “fish.” The trial judge overruled those objections, finding that Garza could testify about matters that already had been addressed by the plaintiff. Tel-lus eventually asked for a continuing objection “to anything that wasn’t in the report,” but Garza was not asked about the staining until the very end of his extensive direct testimony, without further objection from Tellus. Notably, the trial judge allowed Tellus to present rebuttal evidence about the “fish” over TPIC’s objection.
¶ 20. Certainly, our rules are designed to prevent trial by ambush, but Tellus cannot make such an argument for the first time on appeal. Tellus never once argued that it had been denied the right effectively to rebut Garza’s opinion. Indeed, it was not until post-trial motions that Tellus directed the judge to the precise testimony at issue on appeal. Even then, Tellus did not claim that Garza’s brief testimony was such a significant discovery violation that it had been denied the opportunity to present an effective rebuttal.
¶21. We note that “compliance with the rule involves a fact-intensive comparison between the subject matter contained in discovery responses and the subject matter of the testimony given by the expert at trial.” Hall, 953 So.2d at 1097 (emphasis added) (citing Buskirk, 856 So.2d at 264). In this case, the plaintiffs never offered a specific comparison between the trial testimony and the report. The actual report was presented to the court but once, months before trial, attached as an exhibit to an unrelated pretrial motion.[5] We decline to hold that this *281 one page of testimony, out of thousands, adversely affected a substantial right of the plaintiffs when the same argument was not timely presented to the trial judge. M.R.E. 108(a).

C. Evidence of Bias

¶22. Brad Lowe was employed by TPIC as a full-time “pumper.” His job included well maintenance, reading meters, and reporting gas production for the wells. Lowe’s testimony supported TPIC’s defense, that even if gas existed in the shallow zones, the company did not commingle or divert the gas.
¶ 23. Tellus argues that the trial judge improperly excluded evidence of Lowe’s bias. The proffered evidence sought to prove that Lowe had been accused of stealing copper from both TPIC and Tel-lus, and, that while Tellus had sought restitution for the theft, TPIC declined to press charges. The main piece of evidence was an order of nonadjudication from the Lamar County Circuit Court under Mississippi Code Section 99-15-26. The court nonadjudicated a charge of conspiracy to commit grand larceny on conditions that included Lowe’s payment of restitution to Tellus.
¶ 24. According to Tellus, the evidence was admissible to show that Lowe had strong reasons to resent Tellus and to favor TPIC. M.R.E. 616. (“For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible.”) Tellus likens Lowe to a witness for the State in a criminal trial who has agreed to testify in exchange for leniency on a pending charge. In the criminal context, we have held: “[ejvidence that a material witness has received favored treatment at the hands of law enforcement authorities, particularly where that witness is himself subject to prosecution, is probative of the witness’s interest or bias and may be developed through cross-examination or otherwise presented to the jury.” Zoerner v. State, 725 So.2d 811, 814 (Miss.1998) (citations omitted).
¶ 25. We find, as did the trial judge, that there is a notable difference in this case, because TPIC, unlike the State, cannot provide leniency in a criminal prosecution. Importantly, the proffered evidence did not reveal the reasons for the trial court’s ordering restitution to Tellus but not TPIC. The evidence was consistent with Lowe’s testimony that he had not committed any crime involving TPIC’s property. Lowe testified at trial that he was salvaging copper and mistakenly took copper from three of his employer’s transformers. Lowe said he was allowed to keep his job but that TPIC had required him to pay for the copper he mistakenly had taken.
¶ 26. Moreover, the criminal charges arose and were resolved after Lowe had been deposed by the plaintiffs. When the basis for the alleged bias arises after a witness is deposed, and the trial testimony does not “varfy] in material particulars,” this Court has found that even an erroneous exclusion of such evidence does not *282 require reversal. “We think the existence of this deposition guarded adequately that [the witness] not wiggle from his true memory.” W.J. Runyon & Son, Inc. v. Davis, 605 So.2d 38, 48 (Miss.1992), overruled on other grounds, Richardson v. APAC-Mississippi, Inc., 631 So.2d 143, 152 (Miss.1994). For these reasons, we find the issue without merit.

D. Lost Profits Damages

¶ 27. In its final point of error, Tellus argues that the trial judge improperly excluded evidence of lost profits. As with the alleged errors in jury instructions, this argument goes only to the issue of damages and does not warrant reversal of the jury’s finding on liability.

Cross-Appeal

¶ 28. Initially, TPIC did not dispute the plaintiffs’ ownership interests in the shallow gas rights. Five months before trial, however, TPIC filed a complaint with the Lamar County Chancery Court asserting that it was the rightful owner of the shallow gas rights in question, either through adverse possession or as a bona fide purchaser for value. Shortly after filing its complaint to confirm title in the chancery court, TPIC moved to amend its answer in the circuit court case, alleging that ownership was disputed. TPIC also asked the circuit court to stay the litigation while the chancery court matter was pending.
¶ 29. Before the circuit court had ruled on TPIC’s motions, the chancery court dismissed TPIC’s complaint to confirm title, finding that its claims to ownership should have been brought as compulsory counterclaims in the circuit court against Tellus. TPIC did not appeal the chancellor’s dismissal of its compliant. Instead, TPIC filed another complaint with the Lamar County Circuit Court, seeking to have the ownership issue resolved separately from Tellus’s lawsuit. This matter came before the other Lamar County circuit judge, who gave TPIC the option of filing a compulsory counterclaim against Tellus or transferring the case to chancery court. TPIC chose the latter option, and the issue was again placed on the chancery court’s docket.
¶ 30. Understandably, Judge Harrell expressed concern that TPIC was attempting to forum shop, but counsel for TPIC assured the trial judge that TPIC simply was trying to have the title issue resolved in the proper court. Eventually, TPIC and Tellus agreed that Judge Harrell would resolve the question of ownership before Tellus’s conversion claims could be submitted to the jury. During trial, Judge Harrell announced that he had studied the competing evidence and had determined that Tellus had a legitimate ownership interest in the shallow gas rights. He also asked Tellus’s attorneys to draft a written order. That order was entered after the jury had found in favor of TPIC.
¶ 31. TPIC has cross-appealed the declaratory judgment, making interrelated arguments that: (1) the declaratory judgment exceeded the scope of the complaint’s demand for relief; (2) the circuit court did not have jurisdiction over title issues; and (3) the ownership issue became moot once the jury had entered a general verdict in favor of TPIC. Mississippi Rule of Civil Procedure 57 grants courts of record the discretion to enter declaratory judgments in appropriate cases. M.R.C.P. 57 cmt. (“The granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest.”) See also State Farm Mut. Auto. Ins. Co. v. McGee, 759 So.2d 358, 359 (Miss.1999) (holding that trial court did not “abuse its discretion” in refusing to grant declaratory judgment). While the decision to grant this type of relief is discretionary, the judg- *283 merit’s conclusions of law are reviewed de novo on appeal. Tunica County v. Hampton Co. Nat’l Sur., LLC, 27 So.3d 1128, 1131 (Miss.2009) (citing S.C. Ins. Co. v. Keymon, 974 So.2d 226, 229 (Miss.2008)).
¶ 32. TPIC claims that the declaratory judgment improperly granted relief that was never requested. The specifics of this argument are unclear, and TPIC does not adequately explain how the adjudication of ownership was outside the scope of the pleadings. Count One of Tel-lus’s complaint requested a declaratory judgment on several issues related to Tel-lus’s interest in the shallow-gas rights, including whether Tellus and TPIC were “legal co-tenants of the leasehold estate in the Bilbo A Lease.” The trial centered on conversion, a claim for which the plaintiffs could not recover damages without first establishing lawful ownership. Wilson v. General Motors Acceptance Corp., 883 So.2d 56, 68-69 (Miss.2004). Tellus agreed that this essential element would be decided by the trial judge before the conversion claim could be presented to a jury. As a threshold question, a determination of ownership most certainly would “terminate the controversy or remove an uncertainty.” M.R.C.P. 57(4).
¶ 33. We also note that a trial judge may grant relief that is not demanded in the pleadings, if the relief is supported by the evidence and is within the court’s jurisdiction to grant. M.R.C.P. 54(c). This general rule extends to declaratory judgments under Rule 57. M.R.C.P. 57 cmt. Moreover, TPIC cannot claim that it was unfairly surprised because it agreed that the trial judge would determine ownership and because the trial judge announced his ruling before the case was submitted to the jury. See Cain v. Robinson, 523 So.2d 29 (Miss.1988) (award of monetary damages not error despite no request for relief when allegations in the complaint supported the award); M.R.C.P. 15(b) (issues not raised by the pleadings may be tried by consent). M.R.C.P. 15(b). Under these circumstances, we cannot find that the declaratory judgment was an abuse of the trial judge’s discretion.
¶ 34. TPIC also argues that the circuit court did not have jurisdiction to determine the rightful owner of the shallow gas. Citing McDonald’s Corp. v. Robinson Indus., Inc., 592 So.2d 927, 934 (Miss.1991), TPIC recognizes that courts of law may have pendent jurisdiction to try title if that issue is incidental to the main action, but TPIC attempts to distinguish McDonald’s by arguing that the jury verdict in its favor mooted the ownership issue. TPIC relies heavily on the fact that the formal judgment was entered after the jury verdict, but the trial judge made a clear ruling from the bench well in advance of jury deliberations. In addition, TPIC cites no authority to support its argument that a jury verdict somehow can divest the trial court of jurisdiction and void a previous ruling by the court. These arguments are even more specious given that jurisdiction was heavily litigated and that TPIC eventually acquiesced to the circuit court’s authority. We find no merit in the defendants’ arguments on cross-appeal and will not disturb the declaratory judgment.
Conclusion
¶ 35. Both sides are aggrieved by the final judgment, but neither side is entitled to reversal. For the reasons expressed in this opinion we affirm the final judgment of the Lamar County Circuit Court.
¶ 36. ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.
CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER, PIERCE AND *284 KING, JJ., CONCUR. WALLER, C.J., AND RANDOLPH, J., NOT PARTICIPATING.

. Total Petrochemicals, TPIC's predecessor under the Bilbo A Lease, was also a defendant at trial. The jury returned a separate verdict in favor of Total, and Tellus appealed. The appeal was voluntarily dismissed, but the appellate record in the Total appeal was consolidated with that of the TPIC appeals.

. For example, while the statute of limitations can be a complete affirmative defense, the jury was instructed that it would not bar a claim for any gas produced within three years of the complaint.

. The only other statute authorizing criminal penalties for testifying without a license pertains to land surveying. Miss.Code Ann. § 73-13-95 (Rev.2008).

. The Alabama Code section related to engineers explicitly provides that expert "qualification by the court shall not be withheld from an otherwise qualified witness solely on the basis of the failure of the proposed witness to hold such valid Alabama license.” Ala.Code § 34-11-1 (2010).

. Tellus filed a motion to supplement the record with Garza’s report, apparently under the *281 belief that the report was not before us. TPIC filed a response in opposition, arguing that the motion was unnecessary because Garza’s report is in the record on appeal. TPIC opposed motion to the extent Tellus sought to include the exhibits to Garza’s report. The motion was passed for consideration on the merits. Having reviewed the record, TPIC is correct that the report appears in the trial clerk’s papers as an exhibit to one of Tellus's pretrial filings. Accordingly, we hereby deny Tellus's motion to supplement the record to the extent it seeks to add the report's exhibits, and dismiss the motion as moot to the extent that it seeks to supplement the record with a document already before this Court.